**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Monica MARTIARENA, Defendant–
Appellee.**

No. 90–8726.

United States Court of Appeals,
Fifth Circuit.

March 11, 1992.

LeRoy M. Jahn, Mark L. Barrett, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellant.

Joe S. Petsch, Del Rio, Tex., for defendant-appellant.

Before POLITZ, Chief Judge, BROWN and JONES, Circuit Judges.

POLITZ, Chief Judge:

The jury found Monica Martiarena guilty of aiding and abetting the willful failure to file a currency transaction report (CTR), in violation of 31 U.S.C. § 5313 and 18 U.S.C. § 2. The district court then entered a judgment of acquittal and the government timely appealed. For the reasons assigned, we affirm.

*Background*

During the latter part of 1988 the Internal Revenue Service and United States Customs Service initiated a joint operation to determine compliance with various reporting requirements involved in currency transactions. They targeted the currency exchange houses on the United States/Mexico border. These houses typically are known by the Spanish name, "casa de cambio." The owners and employees of the casas de cambio were orally advised of their obligation and that of their patrons to file CTRs.

The legislation and regulations at issue herein require a financial institution to file a CTR whenever it exchanges currency exceeding $10,000.[1] The financial institution

---

1. The relevant statute is 31 U.S.C. § 5313 which provides in pertinent part:

in this case was an adjunct of a Texaco gas station managed by Jose Martiarena in Del Rio, Texas. His daughter Monica worked at the gas station, doing so without pay.

In early 1989 a Customs agent visited the Martiarena Texaco station and distributed CTR forms and posters explaining the duty of the casa and its patrons to file the currency reports. Monica Martiarena states that she displayed the posters but did not read the entire text.

Sometime prior to March 1989 Miguel Nicolas, a paid non-law enforcement agent of the IRS referred to as a "contract investigator," approached Jose Martiarena and made known his desire to exchange dollars for pesos. Nicolas stated that he needed the pesos to pay a bribe in Mexico. Jose Martiarena agreed to make the exchange and further agreed not to file a CTR. There is no evidence that Monica Martiarena was either present during or aware of this discussion.

On March 8, 1989 Nicolas and a Customs agent entered the Texaco station and told Monica Martiarena that they wished to conduct business with her father. She telephoned her father, who was a few minutes away at another of his business places, and informed him of the waiting customers. When Jose Martiarena arrived the agents gave him $12,000 which they wished to exchange for pesos. Jose Martiarena told them that he would have to get the pesos from Mexico and that they should return to the station between 10:30 and 11:00 a.m.

There is no evidence that Monica Martiarena was present or overheard this conversation.

Customs and IRS agents observed Jose Martiarena entering Acuna, Mexico. At some point he told his daughter to call and ask her boyfriend, Julio DeLaFuente–Roman, to join him at a certain restaurant in Acuna. When the two met at the restaurant Jose gave Julio pesos worth several thousand dollars with instructions to take the currency back to the Martiarena casa de cambio. It is apparent that Jose Martiarena divided the package of pesos being taken across the border to Del Rio so that neither he nor Julio would have $10,000 to declare to Customs agents. By this gambit he apparently concluded that neither had to declare the currency and he thus could evade the obligation to file the Currency and Monetary Instrument Report (CMIR) required whenever $10,000 of any currency is taken into the United States. 31 U.S.C. § 5316; 31 C.F.R. § 103.23.[2]

Julio arrived at the Texaco station first and found the two agents waiting there with Monica. The agents voiced concern about the balance of the pesos and Monica responded by explaining that her father had divided the pesos "half and half so they didn't have to report it." One agent then told Monica that they wished to avoid any documentation on the currency. The record does not indicate that Monica Mart-

---

When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes. A participant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.
The relevant Treasury regulation is 31 C.F.R. § 103.22(a)(1) which prescribes:
   Each financial institution other than a casino or the Postal Service shall file a report of each deposit, withdrawal, exchange of curren-

cy or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,-000. Multiple currency transactions shall be treated as a single transaction if the financial institution has knowledge that they are by or on behalf of any person and result in either cash in or cash out totaling more than $10,000 during any one business day.
   Both the United States Code and Code of Federal Regulations include a "currency exchange" and a "currency dealer or exchanger" within the definition of a financial institution. 31 U.S.C. § 5312(a)(2)(J); 31 C.F.R. § 103.-11(i)(3).

2. Monica Martiarena was indicted for aiding and abetting the failure to file a CTR, not a CMIR, for the March 8, 1989 transaction.

iarena in any way responded to this statement.

At 11:00 a.m. Jose Martiarena arrived with the balance of the pesos and they were given to the two agents. He did not request the information needed to complete a CTR on the transaction and no such report was filed. Between March 8 and December 21, 1989 Jose Martiarena had four more currency transactions with undercover agents, exchanging a total of $115,000. No CTR was ever filed. There is no evidence that Monica Martiarena was involved in any of these other transactions.

In June 1990 a 19–count indictment was handed up against Jose Martiarena, Elida Martiarena, Monica Martiarena, and Julio DeLaFuente–Roman. Monica Martiarena was charged in only one count, for aiding and abetting Jose Martiarena in his willful and knowing failure to file a CTR for the March 8, 1989 currency exchange described above. She was tried and the jury returned a verdict of guilty. On post-conviction motion the trial judge granted a judgment of acquittal.

### Analysis

■ The government may appeal from a post-conviction entry of judgment of acquittal. 18 U.S.C. § 3731; *United States v. Varkonyi*, 611 F.2d 84, 85 (5th Cir.), *cert. denied*, 446 U.S. 945, 100 S.Ct. 2173, 64 L.Ed.2d 801 (1980). When ruling upon such a motion the trial court must determine whether the relevant evidence, viewed in the light most favorable to the prosecution, could be accepted by a jury as adequate and sufficient to support the finding of the defendant's guilt beyond a reasonable doubt. The district court may not substitute its own subjective interpretation of the evidence for that of the jury. In reviewing the trial court's ruling, we apply the same standard.

In the case at bar the district court found that there was sufficient evidence to support a reasonable inference that Monica Martiarena (1) was aware of the obligation to file a CTR and of her father's failure to file a CTR; (2) had aided and abetted the general monetary transactions of exchanging pesos for dollars; and (3) had knowingly and actively assisted her father's failure to file a CMIR by the fact that she sent her boyfriend to help her father transport the currency over the border in sums less than $10,000. The district court also found, however, that there was no evidence that Monica Martiarena had actively participated in conduct that assisted or rewarded her father's failure to file a CTR. The court therefore held that Monica did not aid and abet her father's filing omission even though she assisted in the underlying exchange transaction that made the filing of a CTR necessary.

The government insists that the district court erred by defining too narrowly the elements of aiding and abetting a 31 U.S.C. § 5313 violation. The government contends that by proving Monica Martiarena had assisted her father in bringing about an exchange of pesos for dollars with knowledge that he did not intend to file a CTR, the government had therefore proved that Monica had aided and abetted her father's failure to file a CTR. We are not persuaded.

■ To sustain a conviction of aiding and abetting under 18 U.S.C. § 2,[3] the government must show that the defendant (1) associated with a criminal venture, (2) participated in the venture, and (3) sought by action to make the venture succeed. *Nye & Nissen v. United States*, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949); *United States v. Gallo*, 927 F.2d 815 (5th Cir.1991). " 'Association' means that the defendant shared in the criminal intent of the principal. 'Participation' means that the defendant engaged in some affirmative conduct designed to aid the venture." *United States v. Triplett*, 922 F.2d 1174, 1178 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2245, 114 L.Ed.2d 486 (1991). Albeit relevant and material, mere presence and association alone are insufficient to

---

**3.** In pertinent part, 18 U.S.C. § 2 provides that:
    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

sustain a conviction of aiding and abetting. *United States v. Hernandez–Beltran,* 867 F.2d 224 (5th Cir.), *cert. denied,* 490 U.S. 1094, 109 S.Ct. 2439, 104 L.Ed.2d 995 (1989).

The criminal offense material to the charge against Monica Martiarena was her father's willful failure to file a CTR on the March 8, 1989 currency exchange. The necessary inquiry then must be whether the telephone call she placed to her father to inform him that the agents were at the Texaco casa to see him, her call to her boyfriend to meet her father to help transport the pesos into the United States, and her waiting at the casa with the agents pending her father's return on March 8, 1989, constituted "participation" in her father's subsequent and independent failure to file the required CTR. Whereas the phone call to her boyfriend and the statement to the agents may reflect that Monica was aware of and assisted in the avoidance of filing a CMIR, she was not indicted for that offense. But neither that conduct, nor waiting with the agents for her father's return suffices to constitute aiding and abetting the failure to file the CTR. In fact the supposed inculpatory conduct, fairly viewed, was composed of no more than routine actions normally expected of an employee of a financial institution legitimately conducting a currency exchange. The government was obliged to prove more. Had the government proven that she acted in such a way as to purposely defeat the CTR reporting requirements she would have been proven guilty of the aiding and abetting charge. *United States v. Kington,* 875 F.2d 1091 (5th Cir.1989). Had she lied about the amount involved, given assurances that no CTR would be filed, or otherwise actively aided her father's failure, a different case would have been presented. But that is not the case at bar.

In reaching this conclusion we note that other courts have affirmed convictions for aiding and abetting the failure to file a CTR only upon a finding that the defendant actively participated in conduct that assisted or rewarded the failure to file.

*See, e.g., Kington,* 875 F.2d at 1095–96 (defendants conducted transactions without filing CTRs when required and also disguised the character of the transactions so that co-workers would overlook the need to file a CTR); *United States v. Rigdon,* 874 F.2d 774 (11th Cir.), *cert. denied,* 493 U.S. 958, 110 S.Ct. 374, 107 L.Ed.2d 360 (1989) (defendant acted like a teller, took in money and disguised its character to avoid filing a CTR); *United States v. Cure,* 804 F.2d 625 (11th Cir.1986) (defendant knowingly received cash and delivered it to the people acting as the financial institution knowing that they would not file a CTR); *United States v. Heyman,* 794 F.2d 788 (2d Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986) (defendant purposely structured deposits so that his company would not realize its obligation to file a CTR).

In rendering a post-conviction judgment of acquittal the trial court did not err. The judgment appealed is AFFIRMED.