**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 95-60551

UNITED STATES OF AMERICA

VERSUS

SAMUEL RAY HALL, JR.,

Appeal from the United States District Court
for the Northern District of Mississippi

April 14, 1997

Before POLITZ, Chief Judge, and REAVLEY and DENNIS Circuit Judges.

DENNIS, Circuit Judge.

Defendant, Samuel Ray Hall, Jr., pleaded guilty to the use and the carrying of a firearm (in relation to a drug trafficking crime), 18 U.S.C. § 924(c)(1), and was sentenced to 60 months. Defendant appealed directly. We vacate his conviction and sentence and remand this case to the district court for further proceedings. The record does not establish a factual basis for defendant's plea to either the use or the carrying of a firearm in relation to a drug trafficking crime. "To sustain a conviction under the "use" prong of § 924(c)(1), the Government must show that the defendant

actively employed the firearm during and in relation to the predicate crime." *Bailey v. United States*,____U.S.____, 116 S.Ct. 501, 509 (1995). On the other hand, to sustain a conviction under the "carry" prong of that statute the prosecution must show that the firearm was transported by the defendant, or was within his reach, during and in relation to the predicate crime. *United States v. Pineda-Ortuno*, 952 F.2d 98, 104 (5th Cir.), *cert. denied*, 504 U.S. 928 (1992). *United States v. Blankenship*, 923 F.2d 1110, 1116 (5th Cir.), *cert. denied*, 500 U.S. 954 (1991). The facts do not show that Hall either "used" or "carried" a firearm during and in relation to his drug trafficking crime.

BACKGROUND

Defendant-appellant, Samuel Ray Hall, Jr., was named with DeMarco Morgan, Michlene Morgan, and Raymond Kinsey in a two-count indictment on March 19, 1993. Count one charged Hall with aiding and abetting the Morgans and Kinsey in the possession with intent to distribute crack cocaine on February 11, 1993, in violation of 21 U.S.C. § 841. Count two charged Hall and the others with knowingly and intentionally using and carrying a firearm during and in relation to a drug trafficking crime on February 11, 1993, in violation of 18 U.S.C. § 924 (c)(1). In this appeal, only the use and the carrying of the firearm count is at issue.

On August 4, 1993, Hall pleaded guilty to the use and carrying of a firearm in relation to a drug trafficking crime. On January 6, 1994, Hall was adjudged guilty of "possession of a firearm during the commission of a drug trafficking crime" in violation of

2

18 U.S.C. §924(c)(1) and sentenced to 60 months imprisonment to be served consecutively with his predicate offense sentence. In this direct appeal, Hall challenges the conviction and sentence based on his guilty plea to using and carrying the firearm in violation of the statute.

## STANDARD OF REVIEW

"An acceptance by the district court of a guilty plea is a factual finding reviewable under the clearly erroneous standard." *United States v. Briggs*, 920 F.2d 287, 293 (5th Cir. 1991)(citing *United States v. Oberski*, 734 F.2d 1030, 1031 (5th Cir. 1984); *see also United States v. Dayton*, 604 F.2d 931 (5th Cir. 1979), *cert. denied*, 445 U.S. 904 (1980).

## ANALYSIS

The statute at issue, 18 U.S.C. § 924(c)(1), in pertinent part, provides that:

> Whoever, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

The only source from which the trial court determined that there was a factual basis for Hall's plea of guilty to a violation of § 924(c)(1) was the Government attorney's statement:

> In early February, 1993, agents with the Lowndes County Sheriff's Department Narcotics Division received information from different sources of a group in town from Florida who were involved in selling crack cocaine in the area and were located at a mobile home in the area. On February 11, 1993, the agents executed a search warrant at 1322 Mike Para Road for a trailer located on lot 55. That's a mobile home. And in the mobile home they found four persons, the defendants in this case, Demarco Morgan, Michlene Morgan, Samuel Hall and Raymond Kinsey. In the mobile home the agents found

3

approximately 323.4 grams of cocaine base, which is also known as crack cocaine. Most of the cocaine was on a coffee table in the living room and on the floor beside the coffee table. A couple packages of the cocaine were located in a bedroom on the floor beside a bed in which Raymond Kinsey was located. At the time the agents entered the residence, Demarco Morgan and Samuel Hall were in the living room where the cocaine was located. Michlene Morgan was in a different bedroom. Cocaine residue was found in two beer cans and also on razor blades at the location of the coffee table. The agents will testify that the razor blades are commonly use [sic] to cut up rock cocaine into smaller rocks for distribution. And in fact, when the agents entered the residence a quantity of the cocaine was packaged up in small rocks and another quantity there at the coffee table had not yet been cut up. And the razor blades and other implements for cutting up the cocaine were located there, and Demarco Morgan's hands had cocaine powder on them at the time.

The agents also received $2,064 in U.S. currency, which was in bills that was consistent with drug trafficking scales. They seized one set of Old House Scales, which are commonly used for weighing drugs for distribution. They also seized three boxes of plastic bags of the type used to package cocaine and the type that was found in the residence in which cocaine was packaged and repackaged. They found two pagers, one box of single edge razors, eight plastic bags containing cocaine and residue.

Inside they also found two firearms. A Cobra 9 millimeter caliber semiautomatic pistol with the serial number described in the indictment. That was on the floor within a few feet of the coffee table where the quantity, vast majority of the cocaine base was located. In the bedroom in which Raymond Kinsey was located, the officers found a 7.62 caliber MAK .90 Sporter semiautomatic rifle of the serial number described in the indictment. It was laying on the bed in that bedroom. Next to the bed on the floor was also a quantity of cocaine. Raymond Kinsey was found in that room and he was zippered [sic] up inside a suitcase where he was attempting to hide from the officers.

The firearms were readily available to the occupants of the trailer and they could be easily accessible to protect the drugs, the drug proceeds, and to protect the drug trafficking operation from the rip offs and from law enforcement officers.

To show intent and knowledge, the government would also show that on March 3, 1993, approximately a month after their search, one ounce, approximately one ounce of cocaine base was seized from Raymond Kinsey and Demarco Morgan in Jacksonville, Florida, in the car that they were stopped by law enforcement officials. Kinsey attempted to run and was apprehended, and he had the approximately one ounce of cocaine base on him. Demarco Morgan was in the car with him at the time they were stopped.

The Crime Lab in the case identified the cocaine base seized as approximately 323.4 grams of cocaine base.

At trial, agents will testify based on their training and experience and knowledge that cocaine in the Columbus area is usually sold in $20 rocks. The $20 rocks generally weigh about 1/10 of a gram, and that the 323 grams of crack cocaine would convert into approximately 3,230 street sales of $20 rocks, which would generate an income of approximately $64,000.

On April 4, 1993, while in jail in Jacksonville, Florida, after his arrest down there, Raymond Kinsey asked to speak with and waived his Miranda rights and was interviewed by the Sheriff's office and the FBI. Raymond Kinsey told the FBI that he first saw Demarco Morgan and Samuel Hall with cocaine around October 1992. He saw them break crack cocaine cookies into smaller pieces for resale. Also he stated that Hall and Demarco Morgan obtained crack from a person in San Antonio, Texas, and he identified that person. He also stated that while in Columbus Raymond Kinsey saw Samuel Hall bring back 8 ounces of crack cocaine to Demarco Morgan, and that Samuel Hall brought it back from his source in Texas.

On the date of the seizure in this case, February 11, 1993, Michlene Morgan gave the officers a signed statement. She stated that she knew that her husband, Demarco Morgan, had been dealing cocaine for about three months. She stated that in mid January, 1993, Raymond, who is Raymond Kinsey, came to Florida, picked her up and took her to Lowndes County. While in Lowndes County she walked into the living room of the trailer and saw Demarco Morgan and Raymond with about five sandwich bags containing rocks of cocaine.

She stated that she went back to Florida, returning in early February, and she saw a pile of crack cocaine on the coffee table while Demarco and Raymond were there with Samuel, who [sic] she did not know Samuel's last name. And, of course, he was identified as Samuel Hall.

She also stated on February 11th, the date of the seizure, just prior to the seizure, Demarco Morgan, Raymond and Samuel had six or more bags of rock cocaine on the living room coffee table. That Samuel had a bag of cocaine in his hand and that Demarco had residue on his hand from cutting up the rocks.

She stated that Raymond was sitting on the floor next to the coffee table where the cocaine was located. A few minutes later the warrant was executed. She stated that based on what she saw and heard she knew that Demarco and Raymond and Samuel were selling crack rock cocaine in Lowndes County. She heard them discussing it and discussing making trips to pick up more.

Also, too, Raymond Kinsey stated that Michlene Morgan had gone on trips with them to pick up cocaine. That she was taken along in hopes that that would help avoid interdiction

5

> on the highways by officers who are trained to profile and stop people who are transporting drugs by vehicle.
>
> Also, too Your Honor, I would note that the individuals in this case have agreed to cooperate with the government. Demarco Morgan has already started cooperating with the government as, of course, has Raymond Kinsey.
>
> That would summarize the government's proof, Your Honor.

After the judgment of conviction and sentence was entered upon Hall's guilty plea, the United States Supreme Court rendered its decision in *Bailey v. United States*, ____U.S.____, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), definitively interpreting the "use" prong and indirectly shedding light on the meaning of the "carrying" prong of § 924(c)(1). Bailey's authoritative interpretation of § 924 (c)(1) applies retroactively to the present case which comes before us on direct appeal. *United States v. Andrade*, 83 F.3d 729, 730, n.1 (5th Cir. 1996). Although a guilty plea typically waives objection to a non-jurisdictional defect in the proceedings below, we nevertheless consider a challenge to a guilty plea on direct appeal on grounds that an intervening decision establishes that a defendant's conduct did not constitute a crime. *Id*. at 731 (citing authorities).

A. Hall did not "use" the firearm.

In *Bailey* the Supreme Court held "that § 924(c)(1) requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." 116 S.Ct. at 505; and concluded that the evidence was insufficient to support either of the two defendants' convictions. *Id.* at 509.

Roland Bailey and Candisha Robinson were separately convicted

6

of federal drug offenses and of violating 18 U.S.C. § 924(c)(1). Police stopped Bailey in his car for lack of a license plate and safety sticker, seized cocaine in his passenger compartment and found a loaded pistol in his locked trunk. Police executing a search warrant at Robinson's apartment, based on her previous sales of crack cocaine, found an unloaded, holstered firearm locked in a trunk in her bedroom closet. There was no evidence in either case that the defendant actively employed the firearm in any way. The Court of Appeals, sitting en banc, consolidated the cases and affirmed the convictions, applying an "accessibility and proximity" test to determine "use" within § 924(c)(1)'s meaning, holding, in both cases, that the gun was sufficiently accessible and proximate to the drugs or drug proceeds that the jury could properly infer that the defendant had placed the gun in order to further the drug offenses or to protect the possession of the drugs. *United States v. Robinson*, 36 F.3d 106 (D.C. Cir. 1994)(*en banc*).

The Supreme Court, in arriving at its interpretation that §924(c)(1) firearm "use" requires that the defendant "actively employ" the firearm as an "operative factor" in relation to the predicate offense, considered the history and purpose of the law, the generally prevailing meaning of its words, the context in which the words occur, the text of the law as a whole, and other laws on the same subject matter. The Court reasoned that Congress intended "use" to have a more limited meaning than "mere possession" because it had frequently used the term "possess" in gun-crime statutes to describe prohibited gun-related conduct and easily could have done

so in §924(c)(1). Consequently, the Court rejected the Court of Appeals' proximity and accessibility standard which provided almost no limitation on the kind of possession that would be criminalized. Instead, the Court observed that the ordinary and natural meaning of the word "use" implies "action and implementation," 116 S.Ct. at 506, and quoted with approval from then Chief Judge Breyer's dissenting opinion in *United States v. McFadden*, 13 F.3d 463, 467 (1st Cir. 1994)("the ordinary meanings of the words 'use' and 'carry'...connote activity beyond simple possession").

The Bailey opinion noted other factors supporting the ordinary, more active and limited meaning of "use": while a broader reading of "use" would undermine virtually any function for "carry," a more limited, active interpretation of "use" preserves a meaningful role for "carries" as an alternative basis for a charge; courts hesitate to treat statutory terms as surplusage, especially if they describe an element of a criminal offense; there is nothing to indicate that Congress, when it specified two types of conduct with a firearm, "uses" and "carries," intended that they be understood to be redundant. On the contrary, the Court determined that the original version of the statute showed that "use" and "carry" were employed with distinctly different meanings, the original phrase, "uses to commit," indicating that Congress initially intended to reach the situation in which the firearm was actively employed during commission of the crime. Although Congress' 1984 amendment substituted "during and in relation to" the predicate crimes for the earlier provisions linking the firearm

8

to the predicate crimes, the Court concluded that there is no evidence to indicate a legislative intent to expand the meaning of "use" so far as to swallow up any significance for "carry."

For these reasons, the Court rejected the Government's argument that "use" includes having or putting a weapon anywhere with the intention of resorting to it later if necessary to protect drugs or drug sale proceeds. This meaning would deprive "use" of its active connotations, render it indistinguishable from "possession," and leave no nonsuperfluous meaning for "carry." The Court found further support for its interpretation in § 924(d)(1), which provides for the forfeiture of any firearm that is "used" or "intended to be used" in certain crimes. The *Bailey* Court stated:

> In that provision, Congress recognized a distinction between firearms "used" in commission of a crime and those "intended to be used," and provided for forfeiture of a weapon even before it had been "used." In § 924(c)(1), however, liability attaches only to cases of actual use, not intended use, as when an offender places a firearm with intent to use it later if necessary. The difference between the two provisions demonstrates that, had Congress meant to broaden application of the statute beyond actual "use," Congress could and would have so specified, as it did in § 924(d)(1).

116 S.Ct. at 507.

According to *Bailey*, "'use' certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." Id. at 508. "But the inert presence of a firearm, without more, is not enough to trigger §924(c)(1)." Id. "If the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not used." Id.

Applying the precepts of *Bailey v. United States*, we conclude

9

that the record fails to establish a factual basis for Hall's plea of guilty to a violation of the "use" prong of §924(c)(1). The facts contained in the Government attorney's statement, the only source from which a factual basis could have been determined, fail to show that Hall actively employed the firearm, or that the firearm was an operative factor, during and in relation to Hall's predicate drug crime. Under the facts so stated, Hall was in the same room as the firearm when the officers entered, and the weapon was on the floor a few feet from the table upon which drugs and paraphanalia were sitting. But the facts do not show that Hall disclosed, displayed, mentioned or actively employed the firearm in any way. *Accord*, *United States v. Blount*, 98 F.3d 1489, 1494 (5th Cir. 1996); *United States v. Andrade*, 83 F.3d 729 (5th Cir. 1996); *United States v. Fike*, 82 F.3d 1315 (5th Cir. 1996); *United States v. Wilson*, 77 F.3d 105 (5th Cir. 1996).

### B. Hall did not "carry" the firearm.

"Carry" as well as "use" in §924(c)(1) means more than mere possession of a firearm during and in relation to a drug trafficking crime. Bailey requires this conclusion by its express statement, statutory interpretation methodology, and result.

The Court explicitly stated: "Had Congress intended possession alone to trigger liability under §924(c)(1), it easily could have so provided. This obvious conclusion is supported by the frequent use of the term "possess" in the gun-crime statutes to proscribe gun-related conduct. *See, e.g.*, §§ 922(g), 922(j), 922(k), 922(o)(1), 930(a), 930(b)." *Bailey v. United States*, 116

10

S.Ct. 501, 506 (1995).

In interpreting §924(c)(1), a court must start with the language of the statute, giving its words their "'ordinary or natural'" meaning. *See Bailey*, 116 S.Ct. at 506 (citing *Smith v. United States*, 508 U.S. 223, 232 (1993)). The meaning of "carry" is variously defined (within the context of carrying a physical object) as "to move while supporting," "transport," "to wear or have on one's person." Webster's Third New International Dictionary 343 (1961); *see also* Black's Law Dictionary 214 (6th ed. 1990) (defining carry as "to bear, bear about, sustain, transport, remove, or convey. To have or bear upon or about one's person, as a watch or weapon; locomotion not being essential....")

The placement and purpose of a word in the statutory scheme including §924(c)(1) must be considered in addition to its bare meaning. *Bailey*, 116 S.Ct. at 506. "[T]he meaning of statutory language, plain or not, depends on context." *Id*. (citing *Brown v. Gardner*, 513 U.S. 115, 118 (1994)(citing *King v. Vincent's Hosp*., 502 U.S. 215, 221 (1991))). Accordingly, the Supreme Court in *Bailey* looked past the word "use" itself, read §924(c)(1) with the assumption that Congress intended each of its terms to have meaning, and decided that "use" and "carry" each have a "particular, nonsuperfluous meaning." *Id*. at 506-507. Consequently, the *Bailey* Court concluded that "use" cannot be read broadly to mean "possession" because that interpretation undermines virtually any function for "carry," whereas a more limited, active interpretation of "use" preserves a meaningful role for "carries"

11

as an alternative basis for a charge.  *Id*. at 507.

Therefore, "carry," as well as "use," must connote more than mere possession of a firearm by a person who commits a drug offense.  Otherwise, "carry" would be stretched far beyond its ordinary and natural meaning, disregarding the Congressional penchant for using the word "possession" when that is what it means; and "use" would not have a particular, nonsuperfluous meaning or any meaningful role or function as an alternative basis for a charge.  *Id*. at 506-507.

What then must the Government show, beyond mere possession, to establish "carry" for the purposes of the statute?  Based on decisions of this and other Circuits, the ordinary and natural meaning of "carry," and the Supreme Court's statements and reasoning in *Bailey*, we conclude that the prosecution, to sustain a conviction under the "carry" prong of §924(c)(1), must show that the firearm was transported by the defendant -- or was within his reach -- during and in relation to the predicate crime.

In *United States v. Pineda-Ortuno*, 952 F.2d 98, 104 (5th Cir.), *cert. denied,* 504 U.S. 928 (1992), this court held that constructive possession will support a conviction under the "carrying" prong of §924(c)(1) when a firearm is transported in a vehicle and the operator of the vehicle knowingly possesses the firearm in the vehicle during and in relation to a drug trafficking crime.  *See also United States v. Muscarello,* 106 F.3d 636, 639 (5th Cir. 1997); *United States v. Rivas*, 85 F.3d 193, 195 (5th Cir. 1996).  However, the *Pineda-Ortuno* court explained that "in a

12

nonvehicle context . . . 'carrying' requires a showing that the firearm was in reach during the commission of the offense." *Id*. at 103 (citing *United States v. Blankenship*, 923 F.2d 1110, 1116 (5th Cir.), *cert. denied*, 500 U.S. 954 (1991)([A] person cannot be said to 'carry' a firearm without at least a showing that the gun is within reach during the commission of the drug offense)). *Accord, United States v. Joseph*, 892 F.2d 118, 126 (D.C. Cir. 1989) (carrying requires a present ability to exercise dominion and control over a firearm and that the firearm be within easy reach); *United States v. Feliz-Cordero*, 859 F.2d 250, 253 (2d Cir. 1988) (a person cannot be said to carry without at least a showing that the gun was within reach during the commission of a drug offense).

In *Bailey v. United States*, 116 S.Ct. at 507, the Supreme Court compared situations in which an offender could be convicted of violating one prong of § 924 (c)(1) but not the other:

> Under the interpretation we enunciate today, a firearm can be used without being carried, e.g., when an offender has a gun on display during a transaction, or barters with a firearm without handling it; and a firearm can be carried without being used, e.g., when an offender keeps a gun hidden in his clothing throughout a drug transaction.

In the present case, there is no factual basis from which it reasonably can be determined that, during and in relation to his predicate drug offense, Hall transported the firearm, had it on his person or in his clothing, or would have been able to reach the firearm. The facts merely show that Hall was present in the room when the officers entered and observed the firearm on the floor a few feet from the table. The facts do not indicate the spatial

13

arrangement of Hall and the persons in the room with respect to the gun, the table or to each other. Likewise, the facts fail to indicate who transported the gun to the trailer or moved it to its position on the floor. Thus the facts of record conclusively rule out the possibility that Hall had the firearm on his person or in his clothing, and they do not show that he carried the gun in any other way during or in relation to his predicate drug crime.

## CONCLUSION

We conclude and that there is not a factual basis for Hall's plea of guilty to the use or to the carrying of a firearm during and in relation to a drug trafficking crime. Our practice when a plea has been accepted in violation of Rule 11(f) is to vacate and remand for entry of a new plea. *United States v. Briggs*, 920 F.2d 287, 294-295 (5th Cir. 1991); *See also, e.g., United States v. Graves*, 720 F.2d 821, 822, 825 (5th Cir. 1983); *Sassoon v. United States*, 561 F.2d 1154, 1159-60 (5th Cir. 1977); *United States v. Johnson*, 546 F.2d 1225, 1227 (5th Cir. 1977). Accordingly, Hall's guilty plea, conviction and sentence with respect to the use and carrying of a firearm charges are VACATED and the case is REMANDED for further proceedings.