DeMOSS, Circuit Judge,
dissenting:
Christine Wainuskis was arrested after officers executed a search warrant at her residence. Officers found Wainuskis in a bedroom lying on a bed. Either under the mattress (Rule 11 colloquy) or “lying in the edge of the mattress between the bed and the night stand” (Presentence Report), officers found a Colt semi-automatic pistol. Officers also found Wainuskis’ boyfriend Má-teme, an indeterminate number of other people, a quantity of drugs, and additional firearms in another part of the house. There is nothing in the Rule 11 colloquy or the PSR that suggests drugs were found in the bedroom. There is nothing in the Rule 11 colloquy or the PSR that suggests when or by whom the gun was placed under the mattress. There is nothing in the Rule 11 colloquy or the PSR that suggests any particular drag transaction was occurring any place in the house at the time police began the search.
The government prosecuted Wainuskis and she pleaded guilty on the theory that she “used” the Colt .38 caliber semi-automatic pistol taken from under her mattress in violation of 18 U.S.C. § 924(c) by exercising “constructive possession” of the pistol to protect her constructive possession of illegal drags. Thus, Wainuskis’ plea was premised upon exactly the type of “possession with a floating intent to use” that was repudiated in Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Wainusk-is filed this post-judgment motion under 28 U.S.C. § 2255, asking for relief from her plea.
On appeal, we all agree that Wainuskis’ plea cannot be sustained upon the “use” theory that Wainuskis, the government, the probation officer and the district court uniformly understood to be the basis of Wainuskis’ plea at the Rule 11 hearing. The majority opinion nonetheless proceeds to the conclusion that Wainuskis’ plea should be sustained on the alternative basis that she “carried” the Colt pistol found beneath her mattress or that she aided and abetted Mateme’s independent § 924(c) conviction. Because I disagree with both the majority’s approach and the substance of its conclusions, I respectfully dissent.
I.
Wainuskis’ guilty plea is based entirely upon the “use” prong of § 924(c). Both the PSR, which describes her offense, and the criminal judgment, which prescribes her guilt, limit Wainuskis’ offense to “using a firearm during and in relation to a drag trafficking offense.” Neither of those documents purports to base Wainuskis’ criminal liability upon the “carry” prong of § 924(c). Likewise, the transcript of the Rule 11 hear *190 ing leaves .no doubt that the government’s prosecution and Wainuskis’ plea were based upon pr e-Bailey notions’ of § 924(c) liability. The government’s theory, as expressed iii the Rule 11 hearing, was that Wainuskis “exercised constructive possession” of the Colt pistol at the same time she was in constructive possession of drugs. Wainuskis’ plea is consistent. When asked to explain the pí-fense, she admitted to “having drugs with guns,” and stated “I was in possession' of methamphétamine, and I had guns.” Wain-uskis also stated that she kept firearms, “among'other reasons,” to protect her possession of unlawful drugs.
When Wainuskis’ plea was taken, evidence that she kept a firearm for protection related to her. engagement in drug trafficking was sufficient to establish a violation of § 924(c). E.g., United States v. Ivy, 973 F.2d 1184, 1189 (5th Cir.1992). After Bailey, such evidence is no longer considered sufficient. See Bailey, 516 U.S. at 147-49, 116 S.Ct. at 508 (“placement for protection” is indistinguishable from possession and is. insufficient to establish § 924(c) liability); see also United States v. Thompson, 122 F.3d 304, 306 (5th Cir.1997); United States v. Carter, 117 F.3d 262, 265 (5th Cir.1997). Thus, it is patently apparent that Wainuskis entered a plea to conduct that amounted to criminal “use” of a firearm when her plea was accepted, but was rendered non-criminal by the Supreme Court’s disposition in Bailey.
To allow Wainuskis’ plea to stand when premised upon conduct that the Supreme Court later determined to be non-criminal offends notions of traditional fairness and undermines the consensual nature of Wain-uskis’ plea. See United States v. Addonizio, 442 U.S. 178, 186-87, 99 S.Ct. 2235, 2241, 60 L.Ed.2d 805 (1979); Davis v. United States, 417 U.S. 333, 343-47, 94 S.Ct. 2298, 2304-05, 41 L.Ed.2d 109 (1974). When a case has been tried to a jury -and may be based upon either the “carry” prong or an impermissibly broad pr e-Bailey construction of the “use” prong, we have generally required that the case be remanded for retrial on the “carry” prong alone. United States v. Johnston, 127 F.3d 380, 404 (5th Cir.1997), cert. denied, — U.S. -, 118 S.Ct. 1174, 140 L.Ed.2d 183 (1998); United States v. Brown, 102 F.3d 1390, 1401 (5th Cir.1996), cert. denied, — U.S. -, 117 S.Ct. 1455, 137 L.Ed.2d 559 (1997); United States v. Fike, 82 F.3d 1315, 1328 (5th Cir.), cert. denied, — U.S.-, 117 S.Ct. 241, 136 L.Ed.2d 170 (1996). The theory underlying cases such as Johnston, Brown, and Fike is that the appellate record cannot disclose which of the two alternative theories, the impermissible “use” theory or the permissible “carry” theory, was made the basis of the defendant’s conviction. Johnston, 127 F.3d at 404; Brown, 102 F.3d at 1400-01; Fike, 82 F.3d at 1328. When that approach is applied to Wainuskis’ case, we find there is no confusion about the theory made the basis of her conviction — the government, Wainuskis, the probation department, and the district court were all operating on the assumption that Wainuskis’ conviction was to be based upon the “use” prong of § 924(c). Where it is absolutely clear, as it is in this case, that the conviction is based upon a legally erroneous theory of prosecution, the principles articulated in those cases require that the conviction be vacated for repleading or trial on the permissible theory of liability.[1]
*191 With respect to guilty pleas, the Court’s inquiry has typically focused upon whether the defendant’s plea is supported by a sufficient factual basis as required by Federal Rule of Criminal Procedure 11. In making that determination, the Court has likewise considered whether the “use” prong, the “carry” prong, or both, were made the basis of the plea. Where the defendant pleaded guilty to both “using” and “carrying” a firearm, the Court has rejected the conviction to the extent it is based upon a pr e-Bailey definition of “use,” but proceeded to evaluate the adequacy of the evidence to support the defendant’s liability on the alternative theory that he or she “carried” the firearm. E.g., United States v. Hall, 110 F.3d 1155 (5th Cir.1997). Where the defendant was not charged with “carrying” a firearm or pleaded only to “using” a firearm, the Court has refused to consider whether defendant’s conviction can nonetheless be supported on the alternative “carry” prong. E.g., Carter, 117 F.3d 262.
The record demonstrates that Wainuskis’ plea was premised entirely upon a legally erroneous pr e-Bailey definition of § 924(c)’s “use” prong. I would, therefore, vacate her conviction and remand the cause to the district court for repleading or trial on the “carry” prong of that statute.
II.
I also dissent from the majority’s conclusion that Wainuskis “carried” the gun that the police pulled out from under her mattress when her home was searched.
Wainuskis’ case is not novel. Prior to Bailey, prosecutors relied heavily upon the liberal construction given § 924(c)’s “use” prong. Since Bailey was decided, this Court has considered a number of § 2255 motions requesting relief on the basis of the dramatic change effected by the Supreme Court’s narrowing of that oft-invoked statute. That swarm of post-judgment motions for relief has generated an increasing pressure to expand the “carry” prong to accommodate those convictions questioned in light of Bailey. Although our cases are neither completely uniform nor explicit, my reading of § 924(c) and the applicable precedent is that the “carry” prong of § 924(c) requires proof of the following three elements: (1) that a defendant exercised dominion or control over a firearm by touching, moving or transporting the gun; (2) to make it accessible; (3) for the purpose of facilitating or accomplishing the underlying drug trafficking offense. Each of those elements is discussed briefly below.
The plain and ordinary meaning of the term “carry” demands some showing that the defendant touched, moved or transported the gun. See Hall, 110 F.3d at 1161. That interpretation is consistent with our own precedent and with the Supreme Court’s discussion of § 924(c) in Bailey. See Bailey, 516 U.S. at 145-47, 116 S.Ct. at 507 (“a firearm can be used without being carried, e.g., when an offender has a gun on display during a transaction, or barters with a firearm without handling it ”) (emphasis added); see also Thompson, 122 F.3d at 307 (“‘carry’ in § 924(c)(1) involves moving or transporting the firearm in some fashion, or bearing the firearm upon one’s person in some way”). A few of our non-vehicular cases have haphazardly defined “carry” to permit liability any time a defendant is “within arm’s reach” of the firearm, without regard to whether there is evidence the defendant moved, handled or transported the firearm. E.g., Hall, 110 F.3d at 1161. At first blush, those cases appear to be grounded on mere proximity, rather than handling or movement. A closer examination of those cases,, however, reveals that the proximity of the defendant was measured in the opinion itself as a necessary, rather than sufficient, condition for liability. Hall, 110 F.3d at 1162. I have been unable to find any case in which we relied solely upon the defendants proximity to a gun not carried on his or her person to sustain a § 924(c) conviction.
*192 The “carry” prong also demands a showing of accessibility. When a defendant is accused of carrying a gun and there is no vehicle involved, the logical and obvious meaning of the phrase “carrying a gun” includes the idea that the gun is at ready and available for the defendant’s use. See Thompson, 122 F.3d at 307; Hall, 110 F.3d at 1161-62; see also United States v. Foster, 133 F.3d 704, 712-13 (9th Cir.) (en banc). That obvious premise explains both the derivation of the misleading “within arm’s reach” language in our opinions defining “carry” and any confusion about whether it is a necessary or sufficient condition for liability. See United States v. Pineda-Ortuno, 952 F.2d 98, 103-04 (5th Cir.1992) (describing the evolution of the “easy reach” requirement in non-vehicle cases). Movement without ready accessibility would amount to nothing more than storage nearby a drug transaction, an even more ludicrous interpretation of “carry” which would eliminate any potential purpose the gun might otherwise play in facilitating the drug trafficking offense.[2] Cf. Bailey, 516 U.S. at 147-49, 116 S.Ct. at 508 (“A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession.”).
Finally, the plain language of § 924(c) requires proof that the defendant “used” or “carried” the firearm “during and in relation to” a crime of violence or a drug trafficking crime. The “in relation to” clause insures that a defendant will not be punished for committing a drug trafficking offense while in possession of a firearm when the presence of the firearm is coincidental or unrelated to the crime. Smith v. United States, 508 U.S. 223, 238-40, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993). Section 924(c) requires that there be some relation-ship between the presence of the gun and the underlying drug trafficking offense. See United States v. Wilson, 884 F.2d 174, 177 (5th Cir.1989) (Congress sought to avoid construction that would allow conviction for inadvertent possession of a firearm during an unrelated crime). Specifically, the firearm must have some potential purpose or effect with respect to the drug trafficking offense. Smith, 508 U.S. at 238-40, 113 S.Ct. at 2059; see also United States v. Pomranz, 43 F.3d 156, 160 (5th Cir.1995) (the actus reus of a § 924(c) offense is the employment of a weapon in the context of a predefined crime); id. at 162 (“the indispensable predicate offense is as important or essential to the completed offense as the carrying or using of the firearm”). The statute further requires that the actus reus of the offense occur “during” a drug trafficking crime, which makes plain that there must also be some close temporal relationship between the defendant’s employment of the firearm and the predicate drug trafficking offense.
Based upon the foregoing elements, Wain-uskis’ conviction cannot be affirmed on an alternative theory that she “carried” the gun absent evidence that Wainuskis placed the Colt pistol under the mattress at a time relevant to and for the purpose of facilitating the predicate drug trafficking offense.
III.
Applying these elements to Wainuskis’ case discloses that the record is not sufficiently developed to permit liability on the alternate theory that she “carried” the Colt pistol. Given Wainuskis’ admission that the *193 firearm was within arm’s reach, there is no dispute that Wainuskis could have accessed the Colt pistol. Although the majority agrees in principle that both movement and accessibility are required, it fails to require evidence of movement, relying instead upon a series of unjustified inferences drawn from a silent record. The majority fails to even discuss the third element, the statutory requirement that Wainuskis’ conduct occur at a relevant time to and for the purpose of facilitating the predicate drug trafficking offense. That is because there is no evidence that Wainuskis’ “constructive possession” of the subject firearm occurred “during and in relation to” the predicate drug trafficking offense.
The majority simply decides, without the benefit of any supporting evidence, that Wainuskis probably placed the gun under the mattress. To reach that conclusion the majority infers that Wainuskis and Materne had guns in Petal, where they lived with Wain-uskis’ mother, that they moved those guns from Petal to Ellisville, where the majority states they lived alone, and that the gun was found in their home. Therefore, either Wainuskis or Materne must have placed the gun under the mattress.
Let the record be clear. There is no record evidence that the Colt pistol found under Wainuskis’ mattress or any other identifiable weapon was moved from Petal to Ellisville. There is no record evidence that Wainuskis, or any other identifiable person, touched or moved the gun found under the mattress at any particular time. There is no record evidence that Materne and Wainuskis were the sole occupants of the Ellisville house. There is likewise no evidence indicating that drugs were found in the bedroom where Wainuskis was found or that drug transactions ever occurred in the bedroom or that any particular drug transaction was occurring when the house was searched. Similarly, there is no indication that the Colt pistol placed under the mattress was accessible when drug transactions were occurring or that the pistol was capable of or did facilitate any particular drug transaction.
I disagree that we can infer from a silent record that Wainuskis placed the gun under the mattress at some time in the past (satisfying the movement element) for the purpose of employing it in a drug trafficking offense. See United States v. McPhail, 112 F.3d 197, 199-200 (5th Cir.1997) (refusing to infer that gun seized from defendant known to have been involved in drug trade for months was carried in car for the purpose of facilitating a drug transaction). As in McPhail, I do not see how we can simply assume away the required factual basis for Wainuskis’ plea by substituting our own view of what likely occurred for a factual basis showing what actually occurred. Rather, we should require that a sufficient factual basis be developed .in the district court to demonstrate the defendant was connected with this gun, and that the gun made the basis of her conviction was placed under the mattress for some purpose related to her drug trafficking offense. It is absolutely meaningless to first state that § 924(c) liability for “carrying” a firearm requires some evidence, of movement or transportation and then to simply assume that it occurred.[3]
Moreover, even assuming that Wainuskis placed the gun under the mattress, a fact not supported by the record, there can be no § 924(c) liability unless the movement or transportation occurs at a time that is relevant to the predicate drug trafficking offense. See 18 U.S.C. § 924(c); see also United States v. McKinney, 120 F.3d 132, 134 (8th Cir.1997). Simply placing or storing a gun in a given location for future employment in drug trafficking is no more “carrying” a gun for purposes of § 924(c) than it is “using” a gun. Notwithstanding the well-worn mantra that Bailey affects no change in our “carry” precedent, Bailey instructs that both “use” *194 and “carry”, have an active, rather than passive, connotation. Bailey, 516 U.S. at 143, 116 S.Ct. at 506 (“Had Congress intended possession alone to trigger liability under § 924(c)(1), it could easily have so provided.”); • id. at 149, 116 S.Ct. at 508 (“A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession.”); id. at 149-51, 116 S.Ct. at 509 (noting that Congress did not include “intended” conduct within the ambit of § 924(c)(1)).
Without regard to whether simply placing a gun in your bedroom is “carrying” a gun, surely it stretches credibility to contend that lying on that bed in a room where there are no drugs is carrying a gun “during and in relation to” a drug trafficking offense simply because there are drugs in another area of the house. The majority makes absolutely no attempt to establish a nexus between Wainuskis’ constructive possession of the Colt pistol and any underlying drug transaction. Wainuskis was charged with (though not convicted of) possession with intent to distribute methamphetamine. I suppose Wainuskis’ ongoing constructive possession of methamphetamine creates the potential for an argument that she violated § 924(c) anytime she had constructive possession of drugs and wandered too close to a firearm. Fortunately, we have rejected that construction in a factually analogous case.
In United States v. Hall, 110 F.3d 1155 (5th Cir.1997) the defendant was arrested after a search warrant was executed on a private residence. Officers found and arrested Hall in the living room. Id. at 1157-58. There was a large quantity of cocaine on the coffee table and a gun lying on the floor within a few feet of the coffee table: Id. Hall pleaded guilty. This Court reversed and vacated Hall’s conviction, finding that he neither “used” nor “carried” the gun during and in relation to a drug trafficking offense. Id. at 1162. Although the Hall panel relied in part on the fact that the record did not demonstrate how close Hall was to the coffee table, and hence the gun, the' panel also relied upon the fact that there was no evidence to establish “who transported the gun to the trailer of moved it .to its position on the floor.” Id. at 1162.
Wainuskis presents an evén stronger case for relief than Hall. In Hall, the gun was discovered in plain view, in the same room as both the defendant and the drugs. In this case, the gun was found concealed under a mattress in a room where no drugs were found. The existing record does not support the inference that Wainuskis placed the gun under the 'mattress for the purpose of making it accessible to facilitate her drug trafficking offense. Thus, the record contains no evidence that Wainuskis’ constructive possession of the Colt pistol coincided with her employment of that weapon in the predicate drug offense.
In truth, although the majority purports to be requiring evidence that Wainuskis moved or transported the firearm, it has actually inferred that element out of existence and Wainuskis’ conviction rests upon nothing more than what the government stated in the Rule 11 hearing — constructive possession. The majority concedes as much with its comment that ‘Wainuskis merely possessed the weapon and did not actively employ it at the time of the search,” a statement which seems out of line given its conclusion that Wainusk-is “carried” the firearm. Possession of a gun, even during and in relation to a drug trafficking offense, has never been enough to support a § 924(c) conviction for “carrying” a gun: See Smith, 508 U.S. at 238-40, 113 S.Ct. at 2059 (possession of a firearm during a drug trafficking offense is insufficient to support a § 924(c) conviction absent proof that the gun facilitated the drug trafficking offense); Thompson, 122 F.3d at 307 (“[i]t is clear that carry connotes more than mere possession”); Hall, 110 F.3d at 1161 (carry “must connote more than mere possession of a firearm by a person who commits a drug offense”); see also Bailey, 516 U.S. at 143, 116 S.Ct. at 506 (if Congress “intended possession alone to trigger liability under § 924(c)(1) it easily could have so provided”); id. at 143-45, 116 S.Ct. at 506 (the ordinary meanings of “use” and “cafry” connote more than simple possession). Because the record does not contain any evidence that Wainuskis *195 moved or transported the gun made the basis of her plea, I would hold that the factual basis supporting her plea is insufficient to support her liability on the alternative theory that she “carried” the Colt pistol.
Recognizing the weakness of the tenuous series of inferences underlying its conclusions that Wainuskis placed the gun under the mattress, the majority seeks to expand the offense by relying upon additional firearms seized from Wainuskis’ house.[4] The problem with that analysis is that there is no more evidence that Wainuskis moved any one of those other guns than there is evidence that she moved the Colt pistol made the basis of her plea. Likewise, there is no more evidence tying any of those guns to the predicate drug trafficking offense than there is with respect to the Colt pistol made the basis of her plea. Expanding the inquiry to the other guns does not bolster the majority’s conclusion that Wainuskis was carrying a gun during and in relation to a drug trafficking offense.
Wainuskis and Materne admitted that the two guns made the subject of their respective convictions, the Ruger pistol found near Ma-terne and the Colt pistol found near Wain-uskis, were their guns. There is absolutely no evidence that the remaining guns found in the home, or any particular one of the guns found in the home, were exclusively Ma-teme’s and Wainuskis’. To the contrary, the PSR states that “numerous firearms in the kitchen/den area were located within arm’s reach of the majority of the occupants of the kitchen and den.” That statement suggests that there were a number of people in the house when the search occurred, and that those individuals may have been in possession of firearms. Likewise, there is no evidence establishing that Materne and Wain-uskis lived at the Ellisville address alone or that they owned or controlled all of the firearms found at that address.
The record contains no evidence that Wainuskis moved, handled or transported the firearm made the subject of her plea. Even assuming that Wainuskis placed the gun under the mattress, the record contains no evidence that Wainuskis actively employed the firearm during and in relation to a drug trafficking offense. I do not think we can ignore the lessons of Bailey and resurrect p:re-Bailey § 924(c) law by simply ignoring both of those substantive elements of § 924(e) liability. Wainuskis’ conviction cannot be sustained by resort to the novel theory not contemplated in the district court that she “carried” the Colt pistol in violation of § 924(c).
IV.
I also dissent from the majority’s conclusion that Wainuskis’ conviction can be sustained on the theory that she aided and abetted Materne’s independent violation of § 924(c).
As an initial matter, I object to the majority’s reliance upon this theory which was not included in the indictment against Wainuskis, was not made the basis of her plea and was not in fact raised until the government filed a motion for reconsideration of the district court’s decision to grant Wainuskis relief on her § 2255 motion. I also believe, however, that the majority reaches the wrong conclusion from application of this theory.
Wainuskis’ plea cannot be sustained on an aiding and abetting theory absent evidence that Materne violated § 924(c) and that Wainuskis engaged in conduct in furtherance of that offense. Guidry v. Bank of LaPlace, 954 F.2d 278, 288 n. 5 (5th Cir.1992) (aiding and abetting statute requires proof that principal committed subject offense); United States v. McCoy, 539 F.2d 1050, 1064 (5th Cir.1976) (“It is true that the existence of the crime is an element of the offense of aiding and abetting.”); United States v. Barfield, 447 F.2d 85, 89 (5th Cir.1971) (aiding and abetting statute requires proof “beyond a reasonable doubt that the alleged offense was committed by someone and that the person charged as an aider and abettor assisted in the commission of the crime”). Wainuskis’' assistance must be demonstrated with evidence that she (1) associated with the criminal venture; (2) participated in the venture; *196 and (3) sought by action to make the venture succeed. United States v. Salazar, 66 F.3d 723, 729 (5th Cir.1995); United States v. Martiarena, 955 F.2d 363, 366 (5th Cir.1992).
The principal defect in the majority’s aiding and abetting theory is that Materne was not convicted for violating § 924(c).[5] Moreover, the record evidence relating to the § 924(c) Charge against Materne suffers from the same deficiencies as that presented against Wainuskis. The majority posits that Materne was both “using” and “carrying” the Ruger pistol. The pistol was not “used” just because it was sitting in plain view when police searched the house, a fact which the majority equates with Materne’s active employment by “display.” Bailey, 516 U.S. at 148, 116 S.Ct. at 508 (“The active-employment understanding of ‘use’ certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm.”). Whatever the Supreme Court meant by “displaying” a firearm, I feel sure that “active employment” requires something more than simply being within arm’s reach of a visible gun in your home. Similarly, the gun was not “carried” just because, as with the Colt pistol attributed to Wainuskis, it was found within arm’s reach of Materne. The majority’s construction would permit Materne’s liability any time he wandered within arm’s reach of a visible firearm at the same time he was also in constructive possession of drugs. Such a construction reads out Congress’ limitation to firearms used and carried “during and in relation to” a drug trafficking offense. See Smith, 508 U.S. at 238-40, 113 S.Ct. at 2059. Thus, I am not at all certain that the record sufficiently establishes an independent § 924(c) violation by Materne.
Even assuming the record establishes Ma-terne’s independent violation of § 924(c), there is absolutely no evidence to establish the post-judgment theory that Wainuskis aided and abetted that violation. The majority’s discussion depends upon Wainuskis’ participation in Materne’s drug trafficking. See Majority Opinion at 188 (“That the couple lived together and sold drugs together for a period of five months indicates the type of on-going offense to which this doctrine may be easily applied.”). Selling drugs, even when done together, does not violate § 924(c) and does not tend to show how or whether Wainuskis facilitated Materne’s possession of the Ruger pistol.
Wainuskis cannot be held liable for aiding and abetting Materne unless she “engaged in some affirmative conduct designed to aid the venture.” Martiarena, 955 F.2d at 367 (rejecting as insufficient government’s evidence that defendant knew about and attempted to avoid principal’s exposure to liability for offense, and requiring evidence that defendant “actively participated in conduct that assisted or rewarded principal’s offense”). Specifically, Wainuskis’ plea must be supported with evidence that she knew the particular gun was available to Materne and that she took some action which assisted Mateme’s use or carriage of the weapon. E.g., Salazar, 66 F.3d at 729 (“the jury was required to find that Salazar knew that the gun was at least available to Hernandez and that Salazar took some action which assisted Hernandez’s use of the gun”) (internal citation omitted). Mere presence and association, which are all that has been shown here, are insufficient. Id.; Martiarena, 955 F.2d at 366-67.
The majority also invokes the aiding and abetting theory with respect to the Colt pistol found under Wainuskis’ mattress and with respect to the additional firearms found in the house. I can think of no reason why, after reaching the conclusion that Wainuskis’ plea is supported by a sufficient factual basis with respect to her own conduct, the majority needs to develop not one but three separate theories for holding her vicariously liable for Materne’s conduct. The gist seems to be that there are plenty of bad facts to support the notion that somewhere, at some time, § 924(c) was violated, whether by Materne with Wainuskis’ knowledge and assistance, or *197 by Wainuskis herself. While I can understand, and perhaps even sympathize with that position, I think the majority’s indulgence in a fanciful series of inferences and theories reveals a blindly determined intent to support the guilty plea. Federal Rule of Criminal Procedure 11 and the well-established constitutional principles upon which it is based require more. The appropriate remedy is to remand with instructions that each element of the pleaded offense be supported with some factual basis. The government’s Rule 11 burden is light and can be met with evidence logically addressing each element of the offense. When, as here, the law changes dramatically after a plea such that we are purporting to sustain a guilty plea on at least four alternative theories that were never part of the calculus when the defendant pleaded guilty, I think justice demands that we return the case to the district court for a clarification of the plea.
I would vacate Wainuskis’ plea and remand to the district court for repleading or trial with due consideration of the Supreme Court’s decision in Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

. The breadth of the Court's per se rule requiring reversal was recently questioned in United States v. Wilson, 116 F.3d 1066 (5th Cir.1997). Shortly thereafter, the Court voted to consider en banc the scope of the per se rule requiring reversal as applied to Alfred Brown, one of the defendants, in United States v. Wilson. United States v. Brown, 123 F.3d 213 (1997) (granting rehearing en banc). Our en banc consideration of Brown was cut short, however, when the Supreme Court granted a petition, for writ of certiorari in United States v. Muscarello, 106 F.3d 636 (5th Cir.1997), cert. granted, - U.S. -, 118 S.Ct. 621, 139 L.Ed.2d 506 (1997). In Muscarello, the district court dismissed the defendant’s guilty plea to § 924(c), finding that the factual basis for Mus-carello’s guilty plea was a “pre-Bailey composition” that could not properly be relied upon to establish Muscarello’s post-Bailey liability on a different theory. Muscarello, 106 F.3d at 638-39. On appeal, a panel of this Court reversed, holding that the district court’s refusal to rely upon the factual basis was error. Id. The Supreme Court promptly granted a petition for writ of certiorari, and argument is presently scheduled for March 23, 1998. The Supreme Court’s disposition of this issue in Muscarello may well change our understanding of the appropriate remedy in § 2255 cases raising an argument that defendant’s conviction is based upon an imper- *191 missibly broad definition of the "use" prong. If nothing else, that possibility counsels against a hasty decision in this case that may conflict with the Supreme Court's ultimate disposition of the issue in Mnscarello and this Court’s disposition of related issues en banc in United States v. Brown.

. We have on several occasions drawn a distinction between "carry” in the vehicular context ■and "carry” when no vehicle is involved. When a vehicle is involved, the Court has been tempted to ignore the requirement that the firearm be accessible and to rely solely upon the movement element to establish liability for "carrying” a gun. Two of our recent cases go so far as to hold that accessibility is not a required element in a vehicular context. United States v. Harlan, 130 F.3d 1152, 1153 (5th Cir.1997); Muscarello, 106 F.3d 636 (5th Cir.), cert. granted, -U.S. -, 118 S.Ct. 621, 139 L.Ed.2d 506 (1997). The petition for writ of certiorari which was granted in Muscarello framed the relevant issue as whether, contrary to Harlan and Muscarello, liability for "carrying” a gun requires a showing of accessibility.
The majority opines that Muscarello affected no change in our vehicular precedent. I disagree. Muscarello, which requires no showing of accessibility or contemporaneous connection with the underlying drug trafficking offense, is inconsistent with our own precedent and with the Supreme Court's analysis in Bailey.

. Alternatively, the majority relies upon the Magistrate Judge’s “finding” that Wainuskis secreted the weapon under the mattress. The Magistrate Judge never made any such finding. The statement quoted by the majority is part of the Magistrate Judge’s finding and conclusion that Wain-uskis’ exercised no more control over the Colt pistol than possession, and that possession alone is insufficient to establish liability for “carrying” a firearm in violation of § 924(c). Wainuskis admitted nothing by failing to object to the Magistrate Judge’s report recommending that she be granted relief.

. Contrary to the majority’s presentation both the Rule 11 hearing and the PSR rely upon Wainuskis’ possession of the Colt pistol to define her offense.

. Máteme initially pleaded guilty to violating § 924(c) at the same hearing in which Wainuskis pleaded guilty. The docket sheet reflects that Materne later filed a motion to withdraw his guilty plea to the § 924(c) charge, which was granted by the district court. The substance of Mateme’s second Rule 11 hearing, in which he pleaded guilty to other charges, is not part of the appellate record, but it is clear that he was not convicted on the § 924(c) charge.