**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 96-60742

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

CHRISTINE WAINUSKIS,

Defendant - Appellant.

Appeal from the United States District Court
For the Southern District of Mississippi
April 9, 1998

Before GARWOOD, DUHÉ, and DEMOSS, Circuit Judges.

DUHÉ, Circuit Judge:

Defendant-Appellant Christine Wainuskis appeals the district court's denial of her 28 U.S.C. § 2255 motion to set aside her judgment of conviction for violation of 18 U.S.C. § 924(c)(1) because of a change in the law, resulting from a clarification of the meaning of "use" of a firearm in <u>Bailey v. United States</u>, __ U.S._, 116 S.Ct. 501, L.Ed.2d 472 (1995). For reasons that follow, we affirm the district court's denial of her motion.

I.

Following an investigation of her activities and a search of

the residence she shared with Joseph Materne ("Materne"), Christine Wainuskis ("Wainuskis") was indicted by a federal grand jury on four counts involving drugs and weapons: conspiracy to possess with intent to distribute; possession with intent to distribute; knowing use or carrying of a firearm during or in relation to a drug trafficking offense; and felon in possession of a firearm. Officers found methamphetamine, scales, baggies, other items associated with the packaging and distributing of illegal drugs, and 27 guns during the search. Wainuskis was discovered in a bedroom of her residence, lying on a bed with a loaded gun tucked under the mattress. Her co-defendant, Materne, was seated near two weapons, both of which were visible to the searching officers and easily accessible to him.

In exchange for the government dropping charges of conspiracy to possess with intent to distribute methamphetamine and of possession with intent to distribute that drug, Wainuskis pled guilty to the remaining two counts: violations of 18 U.S.C. 924 (c)(1)[1] and 18 U.S.C. § 922(g) (felon in possession of a firearm).[2]

---

[1]The pertinent portion of the statute reads as follows:

> "Whoever, during and in relation to any crime
> of violence or drug trafficking crime... uses
> or carries a firearm, shall,...be sentenced to
> imprisonment for five years... ."

[2]The defendant had an earlier conviction for possession for Sale of a Controlled Substance (methamphetamine) in California, for

2

She admitted that the underlying drug trafficking offense in her violation of § 924(c)(1) was possession with intent to distribute methamphetamine. After hearing the plea colloquy and reviewing the Presentencing Investigation Report ("PSR"), the district judge imposed the mandatory 5-year sentence for the violation of § 924 (c)(1). He departed downward from the sentencing guidelines on the remaining count and assigned a 30-month sentence to run consecutively.

Wainuskis moved to set aside her conviction and sentence for the violation of § 924(c)(1), based on a change in the law resulting from the clarification of "use" of a firearm in Bailey v. United States, __U.S.__, 116 S.Ct. 501, L.Ed. 2d 472 (1995). The district court referred the motion to a magistrate judge, who determined that the gun confiscated from under Wainuskis's mattress at the time of her arrest was not "used or carried" in relation to a drug trafficking offense as defined in Bailey and in United States v. Andrade, 83 F.3d 729 (5th Cir. 1996). Initially, the district court agreed with the magistrate judge's recommendation to vacate the conviction and sentence imposed for the violation of § 924(c)(1), concluding that, under Bailey, the record did not establish a factual basis for such a conviction. Upon further examination of the plea colloquy and the PSR, the district court found that there was sufficient information to support Wainuskis's guilty plea and conviction and denied her motion.

which she was on probation at the time of her arrest for the current offense.

Wainuskis appeals. She argues that the factual basis for her plea establishes no more than mere possession and is insufficient to support a conviction of "use." The Government agrees that there is an insufficient factual basis to support her plea to violating the 18 U.S.C. § 924(c)(1) "use" prong under Bailey. It argues, however, that the plea colloquy record sufficiently supports a guilty determination under the unaffected "carry" prong of § 924(c)(1). We agree.

## II.

Wainuskis's guilty plea was taken under Rule 11 of the Federal Rules of Criminal Procedure. Her appeal is properly before this Court because we have ruled in Andrade, 83 F. 3d 729, 731 (5th Cir.) that although

> [a] plea of guilty typically waives all non-jurisdictional defects in the proceedings below... nonetheless, in this particular context, where intervening law has established that a defendant's actions do not constitute a crime and thus that the defendant is actually innocent of the charged offense, application of this rule is misplaced."

Bailey's clarification of "use" provides Wainuskis with grounds to appeal her conviction and sentence.

We review a district court's denial of a § 2255 motion under two standards. Because "acceptance of a guilty plea is considered a factual finding that there is an adequate basis for the plea," the standard of review of this matter is clear error. United States v. Rivas, 85 F.3d 193, 194 (5th Cir. 1996), (citing United States v. Adams, 961 F.2d 505, 509 (5th Cir. 1992)). We review the court's conclusions of law de novo. United States v. Faubion, 19 F.

4

3d 226, 228 (5th Cir. 1994).

III.

A.

In denying Wainuskis's motion to set aside her conviction and sentence imposed under a Rule 11 plea, the district court examined both the facts available at the time of the plea colloquy and those provided later by the PSR. According to the United States Sentencing Commission, Guidelines Manual, § 6B1.1(c)(Nov. 1995), when a dismissal of charges is part of a plea agreement, the court "shall defer its decision to accept or reject" any plea agreement "until there has been opportunity to consider the presentence report." The Government dismissed two counts against Wainuskis in exchange for her guilty plea. The district court relied on both the plea colloquy and PSR to find a factual basis to support her guilty plea. Logically, it must examine the same information to determine if there is a factual basis to set aside her conviction.

This Court has upheld the district court's use of the PSR to find an insufficient factual basis and to reject a plea agreement. United States v. Foy, 28 F. 3d 464 (5th Cir. 1994). See also United States v. Gulledge, 491 F. 2d 679 (5th Cir. 1974).[3]

Based on the U. S. Sentencing Guidelines and our jurisprudence, the district court was correct in considering all

---

[3]Although the plea colloquy did not establish a sufficient factual basis for the defendants' pleas, the district court could develop an adequate record at the sentencing proceeding to sustain the pleas. Gulledge, 491 F.2d at 679.

information at its disposal to determine that a factual basis for Wainuskis's guilty plea existed and to deny her motion to set aside her conviction and  sentence.

B.

Wainuskis argues that <u>Bailey</u>'s clarification of "use" in § 924(c)(1) requires the setting aside of her sentence and conviction.  "Use" under <u>Bailey</u> connotes more than mere possession of a firearm by a person who commits a drug offense.[4]  The <u>Bailey</u> Court held that the language, context and history of § 924(c)(1) indicates that the Government must show "active employment" of the firearms.[5] Reviewing the language of the statute and Congressional intent, the Court noted that nothing indicates that Congress, when it provided the two terms "use" and "carry," intended that they be understood to be redundant.  "We assume Congress used two terms because it intended each term to have a particular nonsuperfluous meaning.  A firearm can be used without being carried and a firearm can be carried without being used." [6]

In clarifying "use" the Court provided an illustrative list: "brandishing, displaying, bartering, striking with and ... firing or attempting to fire a firearm."[7]  More importantly, the Court noted that use cannot extend to encompass the action of an offender

---

[4] __U.S.__, 116 S.Ct. at 506.

[5] <u>Id.</u>

[6] <u>Id.</u> at 507.

[7] <u>Id.</u> at 508.

6

who has hidden a gun where he can grab and use it if necessary.[8]

Wainuskis's plea colloquy established that she was in a back bedroom during the search of her residence. A pistol was found under a mattress within arm's reach at the time that the search was executed. The PSR indicated that Wainuskis was lying on the bed in that bedroom and that the semi-automatic pistol was loaded. Under Bailey, Wainuskis merely possessed the weapon and did not actively employ it at the time of the search. She is correct in stating that under the Bailey clarification of "use" she has not violated § 924(c)(1).

C.

Section 924(c)(1)constitutes one offense, but can be violated in either of two ways: using or carrying. Bailey recognized that the "carry" prong of § 924(c)(1) brings some offenders who would not satisfy the "use" prong within the reach of the statute.[9]

This Court recently held that, because Bailey did not address the "carry" prong of § 924(c)(1), it had no effect on prior precedent analyzing this language. United States v. Rivas, 85 F.3d 193, 195 (5th Cir.) cert denied, __U.S.__, 117 S.Ct. 593 (1996); United States v. Tolliver, 116 F.3d 120, 127 (5th Cir. 1997), cert. denied, 1997 WL 592674 (U.S., Oct. 14, 1997); United States v. Muscarello, 106 F.3d 636, 638 (5th Cir. 1997), cert. filed, 65 USLW 3728 (Apr. 18, 1997).[10] Our "carry" jurisprudence, when vehicles

---

[8]Id.

[9]Id. at 509.

[10]Muscarello recognized no change in prior precedent analyzing

are not involved, requires a showing that the gun was within arm's reach during the commission of the drug offense. Tolliver, 116 F.3d at 127, (citing United States v. Pineda-Ortuna, 952 F.2d 98, 103 (5th Cir. 1992)). We have stated that mere possession of the firearm is insufficient to support a conviction under the "carry" prong. Tolliver, 116 F.3d at 127; United States v. Hall, 110 F.3d 1155, 1161 (5th Cir. 1997).

In Pineda-Ortuno, we noted that nothing in the legislative history of § 924(c)(1) suggests that the term "carry" should be construed as having any meaning beyond its literal meaning. That literal meaning we derived from Webster's Third International Dictionary, 353 (1966): "to move while supporting (as in a vehicle or in one's hands or arms:...sustain as a burden or load and bring along to another place." We also recognized that the "easy reach" element arose from a judicial expansion of "carrying" in a non-vehicle context. Pineda-Ortuno, 952 F.2d at 104. Earlier we explained in U.S. v. Blankenship, 923 F.2d 1110, 1116 (5th Cir.

---

"carrying" prong at least where the gun is possessed in a motor vehicle. There the defendant knowingly possessed a loaded pistol in the glove compartment of his truck. The vehicle itself was used as a means of carrying the weapon. [W]e observe[d] that what constitutes "carrying" under § 924(c)(1) when the firearm is possessed in the motor vehicle differs substantially from what constitutes carrying a firearm on a person because the means of carrying is the vehicle itself. 106 F.3d at 639, citing United States v. Pineda-Ortuno, 952 F.2d 98 (5th Cir. 1992).

8

1991) that a person cannot be said to "carry" a firearm *without at least a showing* that the gun is within reach during the commission of the drug offense.[11]

More recently in U.S. v. Fike, 82 F.3d 1315 (5th Cir. 1996), we reiterated the necessity of applying a literal meaning to "carry," again based on Webster's definition. Although Fike involved a vehicle, which satisfied the element of transportation, the firearm was also within easy reach, thus sufficiently supporting a jury finding of "carrying." Most recently in U.S. v. Thompson, 122 F.3d 304 (5th Cir. 304 (5th Cir. 1997), we held that carrying involves moving or transporting the firearm in some manner or bearing the firearm upon one's person. It is clear that our jurisprudence in a non-vehicle context requires both that the weapon be moved in some fashion and that it be within arm's reach (readily accessible) for a violation of the "carry" prong of § 924(c)(1).[12]

---

[11]Blankenship was found not to have violated the "carry" prong of § 924(c)(1) because he was arrested some miles away from the motel where he had hidden a gun under a mattress.

[12]We recognize that the following phrasing is found in U.S. v. Hall, 110 F.3d 938 (5th Cir.1997): "[W]e conclude that the prosecution, to sustain a conviction under the 'carry' prong of § 924(c)(1), must show that the firearm was transported by the defendant--**or** was within his reach-- during and in relation to the predicate crime. The text of the decision, citing the Fifth Circuit precedent discussed above, and the facts of Hall, however,

9

There is sufficient information before this Court to find that Wainuskis's conduct satisfies both the transportation and the ready accessibility elements of the "carry" prong. According to the PSR, Wainuskis, her mother, and Materne lived together in Petal, Mississippi. During a five-month period beginning in January 1993, officers searched the trash at the residence, finding numerous labels and boxes for firearm accessories. At some point during that time, Wainuskis's mother moved out. Confidential informants told the government that the defendants had possession of firearms, based on what they had seen when they bought drugs from Wainuskis and Materne.

The defendants moved to Ellisville, Mississippi around July 12, 1993, and a search warrant was executed there July 29, 1993. Twenty-seven guns were found in the residence the two shared. A semi-automatic pistol was seen on a stool next to Materne; a 9mm assault pistol was observed within his reach. Officers discovered Wainuskis lying on a bed with a loaded gun under the edge of the mattress.

Wainuskis agreed at the plea colloquy that she was discovered in a back bedroom and that the pistol was within arm's reach at the time the search was executed. She did not dispute, either, the more specific PSR that described her as "lying in a bed in a rear bedroom,... a loaded semi-automatic pistol lying in the edge of the

do not reflect that a carry violation is proved by either element. It is clear that we require both transportation and ready accessibility for a "carry" violation.

10

mattress between the mattress and the night stand." She admitted that the two had moved from Petal where they were drug trafficking to Ellisville. She acknowledged that they had bought guns to protect their drugs and that they had continued to sell drugs when they moved to Ellisville. From both the PSR and the plea colloquy we could infer that the defendants, in their move, took with them the weapons they had acquired while in Petal to protect their drugs. Because Wainuskis was not charged with using or carrying a particular firearm, we could infer that the gun under the mattress was one of those transported by the defendants and kept within reach for Wainuskis to protect their drugs.

The findings and recommendations proposed by the magistrate judge provide an additional link between Wainuskis, the weapon under the mattress, and the transportation element of "carry." He found that "Wainuskis secreted under her mattress a loaded firearm which was discovered during a search... ." In her traverse to the Government's response to her motion to set aside her conviction, Wainuskis merely contested the application of pre-<u>Bailey</u> "use" to her situation, not that she was the one who had hidden the weapon. Pursuant to 28 U.S.C.§ 636(b)(1) she had 10 days in which to object to specific findings of fact, but she did not.

In entering her guilty plea to a violation of § 924(c)(1), Wainuskis admitted all the facts necessary to show that the gun was "carried" within the context of our jurisprudence.[13] Not only did

_____

[13]The record clearly indicates that Wainuskis possessed drugs with an intent to distribute both when she lived in Petal and when

11

she acknowledge her proximity to a weapon she and Materne had purchased to protect their drugs, but she also did not dispute that she secreted that weapon under the mattress. Additionally, her admissions indicate that there were guns present both in Petal and in Ellisville. It is only logical to infer that she played a part in their move from one residence to the other. Under our "carry" jurisprudence, these facts are sufficient to support Wainuskis's guilty plea to a violation of § 924(c)(1) and a denial of her motion to set aside her conviction.

D.

18 U.S.C. § 2[14] provides grounds to uphold Wainuskis's

_____

she moved to Ellisville. By its nature, this violation is an on-going offense, rather than a one-time transaction. Likewise, it is clear from confidential informants, narcotics agents, and Wainuskis's own testimony that guns played a part in the offense in both locations. The obvious inference that the guns owned by Wainuskis and Materne went with them as they transferred their base of operations to Ellisville satisfies the § 924(c)(1) requirement that the weapons violation occur during and in relation to a drug trafficking offense. Despite the dissent's assertion, it is clear that Wainuskis moved, secreted, and positioned herself within arm's reach of the gun for the purpose of protecting the drugs she possessed and intended to distribute.

[14]18 U.S.C. § 2(a) reads:

12

conviction under both the "use" prong and the "carry" prong of § 924(c)(1) as an aider and abettor of Materne's crime.[15]  That the couple lived together and sold drugs together for a period of five months indicates the type of on-going offense to which this doctrine may be easily applied.  In U.S. v. Williams,[16] we stated that, to be found liable for another's criminal activity, an aider and abettor must share in the criminal intent to use the firearm

_____

> Who ever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

[15]It is not necessary, as the dissent suggests, that Materne be convicted of a § 924(c)(1) violation for Wainuskis to be guilty as an aider and abettor.  See, e.g., United States v. Pearson, 667 F.2d 12 (5th Cir. 1982)(upholding a conviction of aiding and abetting when the charges against the other defendant were dismissed) and United States v. Robins, 978 F.2d 881 (5th Cir. 1992)(holding that where one of the principals was acquitted the other defendant's conviction of aiding and abetting him was not consequently reversed because sufficient evidence existed to find aiding and abetting.)  Materne's withdrawal of his guilty plea to § 924(c)(1) is akin to a dismissal or an acquittal.  Because we find sufficient evidence of aiding and abetting on Wainuskis's part, Materne's withdrawal of a guilty plea to § 924(c)(1) is of little consequence.

[16]985 F.2d 749, 754 (5th Cir. 1993).

13

during a drug trafficking offense. This requires that Wainuskis have knowledge of the presence of firearms.[17] She admitted that she and her co-defendant purchased guns to protect themselves and their drugs. Confidential informants told of seeing guns during their drug deals with the two defendants. Wainuskis and Materne lived together in a house where 27 guns were found.

Agents saw Materne seated in the kitchen with a gun visible next to him on a stool and another loaded weapon visible within arm's reach. The open display of these weapons satisfies the Bailey "use" requirement for his conviction under 924(c)(1). [18] Wainuskis's conduct, her continued association with Materne in the drug dealing scheme, indicates her intent to bring about the success of the venture. It is evident that Wainuskis possessed both the necessary knowledge,[19] that weapons were available for Materne's use, and the intent to be convicted as an aider and abettor in Materne's crime.

As an aider and abettor, Wainuskis can also be found guilty of a violation of the "carry" prong of § 924(c)(1). After Wainuskis's mother had moved from Petal, only Wainuskis and Materne remained in that residence. They moved together to Ellisville. It is a

---

[17]Id., p. 755.

[18]The dissent's comment that a weapon in plain view does not equate to "use" according to Bailey seems directly contrary to the Supreme Court's illustration of "use" as "the silent but obvious and forceful presence of a gun on a table." 116 S.Ct. at 508.

[19]See Id.

14

reasonable inference that one or the other had to move the guns they were known to have possessed in Petal to their new residence in Ellisville where 27 guns were found. Because there is no evidence of any other occupants in the residence, it is also reasonable to infer that one of the two placed the guns found with Materne so that they were readily accessible to him and that one of the two placed the gun found under the mattress where Wainuskis was lying.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Wainuskis's motion to set aside her conviction and sentence.

DENIAL AFFIRMED.

ENDRECORD

15

DeMOSS, Circuit Judge, dissenting:


Christine Wainuskis was arrested after officers executed a search warrant at her residence. Officers found Wainuskis in a bedroom lying on a bed. Either under the mattress (Rule 11 colloquy) or "lying in the edge of the mattress between the bed and the night stand" (Presentence Report), officers found a Colt semi-automatic pistol. Officers also found Wainuskis' boyfriend Materne, an indeterminate number of other people, a quantity of drugs, and additional firearms in another part of the house. There is nothing in the Rule 11 colloquy or the PSR that suggests drugs were found in the bedroom. There is nothing in the Rule 11 colloquy or the PSR that suggests when or by whom the gun was placed under the mattress. There is nothing in the Rule 11 colloquy or the PSR that suggests any particular drug transaction was occurring any place in the house at the time police began the search.

The government prosecuted Wainuskis and she pleaded guilty on the theory that she "used" the Colt .38 caliber semi-automatic pistol taken from under her mattress in violation of 18 U.S.C. § 924(c) by exercising "constructive possession" of the pistol to protect her constructive possession of illegal drugs. Thus, Wainuskis' plea was premised upon exactly the type of "possession with a floating intent to use" that was repudiated in **United States v. Bailey**, 116 S. Ct. 501 (1995). Wainuskis filed this post-judgment motion under 28 U.S.C. § 2255, asking for relief from her

16

plea.

On appeal, we all agree that Wainuskis' plea cannot be sustained upon the "use" theory that Wainuskis, the government, the probation officer and the district court uniformly understood to be the basis of Wainuskis' plea at the Rule 11 hearing. The majority opinion nonetheless proceeds to the conclusion that Wainuskis' plea should be sustained on the alternative basis that she "carried" the Colt pistol found beneath her mattress or that she aided and abetted Materne's independent § 924(c) conviction. Because I disagree with both the majority's approach and the substance of its conclusions, I respectfully dissent.

## I.

Wainuskis' guilty plea is based entirely upon the "use" prong of § 924(c). Both the PSR, which describes her offense, and the criminal judgment, which prescribes her guilt, limit Wainuskis' offense to "using a firearm during and in relation to a drug trafficking offense." Neither of those documents purports to base Wainuskis' criminal liability upon the "carry" prong of § 924(c). Likewise, the transcript of the Rule 11 hearing leaves no doubt that the government's prosecution and Wainuskis' plea were based upon pre-*Bailey* notions of § 924(c) liability. The government's theory, as expressed in the Rule 11 hearing, was that Wainuskis "exercised constructive possession" of the Colt pistol at the same time she was in constructive possession of drugs. Wainuskis' plea is consistent. When asked to explain the offense, she admitted to

17

"having drugs with guns," and stated "I was in possession of methamphetamine, and I had guns." Wainuskis also stated that she kept firearms, "among other reasons," to protect her possession of unlawful drugs.

When Wainuskis' plea was taken, evidence that she kept a firearm for protection related to her engagement in drug trafficking was sufficient to establish a violation of § 924(c). *E.g.*, *United States v. Ivy*, 973 F.2d 1184, 1189 (5th Cir. 1992). After *Bailey*, such evidence is no longer considered sufficient. *See Bailey*, 116 S. Ct. at 508 ("placement for protection" is indistinguishable from possession and is insufficient to establish § 924(c) liability); *see also United States v. Thompson*, 122 F.3d 304, 306 (5th Cir. 1997); *United States v. Carter*, 117 F.3d 262, 265 (5th Cir. 1997). Thus, it is patently apparent that Wainuskis entered a plea to conduct that amounted to criminal "use" of a firearm when her plea was accepted, but was rendered non-criminal by the Supreme Court's disposition in *Bailey*.

To allow Wainuskis' plea to stand when premised upon conduct that the Supreme Court later determined to be non-criminal offends notions of traditional fairness and undermines the consensual nature of Wainuskis' plea. *See United States v. Addonizio*, 99 S. Ct. 2235, 2241 (1979); *Davis v. United States*, 94 S. Ct. 2298, 2304-05 (1974). When a case has been tried to a jury and may be based upon either the "carry" prong or an impermissibly broad pre-*Bailey* construction of the "use" prong, we have generally required that the case be remanded for retrial on the "carry" prong alone.

18

*United States v. Johnston*, 127 F.3d 380, 404 (5th Cir. 1997), *petition for cert. filed*, 66 U.S.L.W. __ (U.S. Jan. 24, 1998) (No. 97-7680); *United States v. Brown*, 102 F.3d 1390, 1401 (5th Cir. 1996), *cert. denied,* 117 S. Ct. 1455 (1997); *United States v. Fike*, 82 F.3d 1315, 1328 (5th Cir.), *cert. denied*, 117 S. Ct. 241 (1996). The theory underlying cases such as *Johnston*, *Brown*, and *Fike* is that the appellate record cannot disclose which of the two alternative theories, the impermissible "use" theory or the permissible "carry" theory, was made the basis of the defendant's conviction. *Johnston*, 127 F.3d at 404; *Brown*, 102 F.3d at 1400-01; *Fike*, 82 F.3d at 1328. When that approach is applied to Wainuskis' case, we find there is no confusion about the theory made the basis of her conviction -- the government, Wainuskis, the probation department, and the district court were all operating on the assumption that Wainuskis' conviction was to be based upon the "use" prong of § 924(c). Where it is absolutely clear, as it is in this case, that the conviction is based upon a legally erroneous theory of prosecution, the principles articulated in those cases require that the conviction be vacated for repleading or trial on the permissible theory of liability.[20]

---

[20] The breadth of the Court's per se rule requiring reversal was recently questioned in *United States v. Wilson*, 116 F.3d 1066 (5th Cir. 1997). Shortly thereafter, the Court voted to consider en banc the scope of the per se rule requiring reversal as applied to Alfred Brown, one of the defendants in *United States v. Wilson*. *United States v. Brown*, 123 F.3d 213 (1997) (granting rehearing en

With respect to guilty pleas, the Court's inquiry has typically focused upon whether the defendant's plea is supported by a sufficient factual basis as required by Federal Rule of Criminal Procedure 11. In making that determination, the Court has likewise considered whether the "use" prong, the "carry" prong, or both,

banc). Our en banc consideration of *Brown* was cut short, however, when the Supreme Court granted a petition for writ of certiorari in *United States v. Muscarello*, 106 F.3d 636 (5th Cir. 1997), *cert. granted*, 118 S. Ct. 621 (1997). In *Muscarello*, the district court dismissed the defendant's guilty plea to § 924(c), finding that the factual basis for Muscarello's guilty plea was a "pre-*Bailey* composition" that could not properly be relied upon to establish Muscarello's post-*Bailey* liability on a different theory. *Muscarello*, 106 F.3d at 638-39. On appeal, a panel of this Court reversed, holding that the district court's refusal to rely upon the factual basis was error. *Id*. The Supreme Court promptly granted a petition for writ of certiorari, and argument is presently scheduled for March 23, 1998. The Supreme Court's disposition of this issue in *Muscarello* may well change our understanding of the appropriate remedy in § 2255 cases raising an argument that defendant's conviction is based upon an impermissibly broad definition of the "use" prong. If nothing else, that possibility counsels against a hasty decision in this case that may conflict with the Supreme Court's ultimate disposition of the issue in *Muscarello* and this Court's disposition of related issues en banc in *United States v. Brown*.

20

were made the basis of the plea. Where the defendant pleaded guilty to both "using" and "carrying" a firearm, the Court has rejected the conviction to the extent it is based upon a pre-*Bailey* definition of "use," but proceeded to evaluate the adequacy of the evidence to support the defendant's liability on the alternative theory that he or she "carried" the firearm. *E.g.*, *United States v. Hall*, 110 F.3d 1155 (5th Cir. 1997). Where the defendant was not charged with "carrying" a firearm or pleaded only to "using" a firearm, the Court has refused to consider whether defendant's conviction can nonetheless be supported on the alternative "carry" prong. *E.g.*, *Carter*, 117 F.3d 262.

The record demonstrates that Wainuskis' plea was premised entirely upon a legally erroneous pre-*Bailey* definition of § 924(c)'s "use" prong. I would, therefore, vacate her conviction and remand the cause to the district court for repleading or trial on the "carry" prong of that statute.

## II.

I also dissent from the majority's conclusion that Wainuskis "carried" the gun that the police pulled out from under her mattress when her home was searched.

Wainuskis' case is not novel. Prior to *Bailey*, prosecutors relied heavily upon the liberal construction given § 924(c)'s "use" prong. Since *Bailey* was decided, this Court has considered a number of § 2255 motions requesting relief on the basis of the dramatic change effected by the Supreme Court's narrowing of that

21

oft-invoked statute. That swarm of post-judgment motions for relief has generated an increasing pressure to expand the "carry" prong to accommodate those convictions questioned in light of *Bailey*. Although our cases are neither completely uniform nor explicit, my reading of § 924(c) and the applicable precedent is that the "carry" prong of § 924(c) requires proof of the following three elements: (1) that a defendant exercised dominion or control over a firearm by touching, moving or transporting the gun; (2) to make it accessible; (3) for the purpose of facilitating or accomplishing the underlying drug trafficking offense. Each of those elements is discussed briefly below.

The plain and ordinary meaning of the term "carry" demands some showing that the defendant touched, moved or transported the gun. *See Hall*, 110 F.3d at 1161. That interpretation is consistent with our own precedent and with the Supreme Court's discussion of § 924(c) in *Bailey*. *See Bailey*, 116 S. Ct. at 507 ("a firearm can be used without being carried, *e.g.*, when an offender has a gun on display during a transaction, or barters with a firearm <u>without handling it</u>") (emphasis added); *see also Thompson*, 122 F.3d at 307 ("'carry' in § 924(c)(1) involves moving or transporting the firearm in some fashion, or bearing the firearm upon one's person in some way"). A few of our non-vehicular cases have haphazardly defined "carry" to permit liability any time a defendant is "within arm's reach" of the firearm, without regard to whether there is evidence the defendant moved, handled or transported the firearm. *E.g.*, *Hall*, 110 F.3d at 1161. At first

22

blush, those cases appear to be grounded on mere proximity, rather than handling or movement. A closer examination of those cases, however, reveals that the proximity of the defendant was measured in the opinion itself as a necessary, rather than sufficient, condition for liability. *Hall*, 110 F.3d at 1162. I have been unable to find any case in which we relied solely upon the defendant's proximity to a gun not carried on his or her person to sustain a § 924(c) conviction.

The "carry" prong also demands a showing of accessibility. When a defendant is accused of carrying a gun and there is no vehicle involved, the logical and obvious meaning of the phrase "carrying a gun" includes the idea that the gun is at ready and available for the defendant's use. *See Thompson*, 122 F.3d at 307; *Hall*, 110 F.3d at 1161-62; *see also United States v. Foster*, 1998 WL 2521, at *9 (9th Cir.) (en banc). That obvious premise explains both the derivation of the misleading "within arm's reach" language in our opinions defining "carry" and any confusion about whether it is a necessary or sufficient condition for liability. *See United States v. Pineda-Ortuno*, 952 F.2d 98, 103-04 (5th Cir. 1992) (describing the evolution of the "easy reach" requirement in non-vehicle cases). Movement without ready accessibility would amount to nothing more than storage nearby a drug transaction, an even more ludicrous interpretation of "carry" which would eliminate any potential purpose the gun might otherwise play in facilitating the drug trafficking offense.[21] *Cf. Bailey*, 116 S. Ct. at 508 ("A

---

[21] We have on several occasions drawn a distinction between

23

defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession.").

Finally, the plain language of § 924(c) requires proof that the defendant "used" or "carried" the firearm "during and in relation to" a crime of violence or a drug trafficking crime. The "in relation to" clause insures that a defendant will not be

"carry" in the vehicular context and "carry" when no vehicle is involved. When a vehicle is involved, the Court has been tempted to ignore the requirement that the firearm be accessible and to rely solely upon the movement element to establish liability for "carrying" a gun. Two of our recent cases go so far as to hold that accessibility is not a required element in a vehicular context. *United States v. Harlan*, 130 F.3d 1152, 1153 (5th Cir. 1997); *Muscarello*, 106 F.3d 636 (5th Cir.), *cert. granted*, 118 S. Ct. 621 (1997). The petition for writ of certiorari which was granted in *Muscarello* framed the relevant issue as whether, contrary to *Harlan* and *Muscarello*, liability for "carrying" a gun requires a showing of accessibility.

The majority opines that *Muscarello* affected no change in our vehicular precedent. I disagree. *Muscarello*, which requires no showing of accessibility or contemporaneous connection with the underlying drug trafficking offense, is inconsistent with our own precedent and with the Supreme Court's analysis in *Bailey*.

24

punished for committing a drug trafficking offense while in possession of a firearm when the presence of the firearm is coincidental or unrelated to the crime. *Smith v. United States*, 113 S. Ct. 2050, 2059 (1993). Section 924(c) requires that there be some relation-ship between the presence of the gun and the underlying drug trafficking offense. *See United States v. Wilson*, 884 F.2d 174, 177 (5th Cir. 1989) (Congress sought to avoid construction that would allow conviction for inadvertent possession of a firearm during an unrelated crime). Specifically, the firearm must have some potential purpose or effect with respect to the drug trafficking offense. *Smith*, 113 S. Ct. at 2059; *see also United States v. Pomranz*, 43 F.3d 156, 160 (5th Cir. 1995) (the actus reus of a § 924(c) offense is the employment of a weapon in the context of a predefined crime); *id*. at 162 ("the indispensable predicate offense is as important or essential to the completed offense as the carrying or using of the firearm"). The statute further requires that the actus reus of the offense occur "during" a drug trafficking crime, which makes plain that there must also be some close temporal relationship between the defendant's employment of the firearm and the predicate drug trafficking offense.

Based upon the foregoing elements, Wainuskis' conviction cannot be affirmed on an alternative theory that she "carried" the gun absent evidence that Wainuskis placed the Colt pistol under the mattress at a time relevant to and for the purpose of facilitating the predicate drug trafficking offense.

## III.

Applying these elements to Wainuskis' case discloses that the record is not sufficiently developed to permit liability on the alternate theory that she "carried" the Colt pistol. Given Wainuskis' admission that the firearm was within arm's reach, there is no dispute that Wainuskis could have accessed the Colt pistol. Although the majority agrees in principle that both movement *and* accessibility are required, it fails to require evidence of movement, relying instead upon a series of unjustified inferences drawn from a silent record. The majority fails to even discuss the third element, the statutory requirement that Wainuskis' conduct occur at a relevant time to and for the purpose of facilitating the predicate drug trafficking offense. That is because there is no evidence that Wainuskis' "constructive possession" of the subject firearm occurred "during and in relation to" the predicate drug trafficking offense.

The majority simply decides, without the benefit of any supporting evidence, that Wainuskis probably placed the gun under the mattress. To reach that conclusion the majority infers that Wainuskis and Materne had guns in Petal, where they lived with Wainuskis' mother, that they moved those guns from Petal to Ellisville, where the majority states they lived alone, and that the gun was found in their home. Therefore, either Wainuskis or Materne must have placed the gun under the mattress.

26

Let the record be clear. There is no record evidence that the Colt pistol found under Wainuskis' mattress or any other identifiable weapon was moved from Petal to Ellisville. There is no record evidence that Wainuskis, or any other identifiable person, touched or moved the gun found under the mattress at any particular time. There is no record evidence that Materne and Wainuskis were the sole occupants of the Ellisville house. There is likewise no evidence indicating that drugs were found in the bedroom where Wainuskis was found or that drug transactions ever occurred in the bedroom or that any particular drug transaction was occurring when the house was searched. Similarly, there is no indication that the Colt pistol placed under the mattress was accessible when drug transactions were occurring or that the pistol was capable of or did facilitate any particular drug transaction.

I disagree that we can infer from a silent record that Wainuskis placed the gun under the mattress at some time in the past (satisfying the movement element) for the purpose of employing it in a drug trafficking offense. *See **United States v. McPhail***, 112 F.3d 197, 199-200 (5th Cir. 1997) (refusing to infer that gun seized from defendant known to have been involved in drug trade for months was carried in car for the purpose of facilitating a drug transaction). As in ***McPhail***, I do not see how we can simply assume away the required factual basis for Wainuskis' plea by substituting our own view of what likely occurred for a factual basis showing what actually occurred. Rather, we should require that a sufficient factual basis be developed in the district court to

27

demonstrate the defendant was connected with this gun, and that the gun made the basis of her conviction was placed under the mattress for some purpose related to her drug trafficking offense. It is absolutely meaningless to first state that § 924(c) liability for "carrying" a firearm requires some evidence of movement or transportation and then to simply assume that it occurred.[22]

Moreover, even assuming that Wainuskis placed the gun under the mattress, a fact not supported by the record, there can be no § 924(c) liability unless the movement or transportation occurs at a time that is relevant to the predicate drug trafficking offense. *See* 18 U.S.C. § 924(c); *see also* **United States v. McKinney**, 120 F.3d 132, 134 (8th Cir. 1997). Simply placing or storing a gun in a given location for future employment in drug trafficking is no more "carrying" a gun for purposes of § 924(c) than it is "using" a gun. Notwithstanding the well-worn mantra that Bailey affects no change in our "carry" precedent, **Bailey** instructs that both "use"

----

[22] Alternatively, the majority relies upon the Magistrate Judge's "finding" that Wainuskis secreted the weapon under the mattress. The Magistrate Judge never made any such finding. The statement quoted by the majority is part of the Magistrate Judge's finding and conclusion that Wainuskis' exercised no more control over the Colt pistol than possession, and that possession alone is insufficient to establish liability for "carrying" a firearm in violation of § 924(c). Wainuskis admitted nothing by failing to object to the Magistrate Judge's report recommending that she be granted relief.

and "carry" have an active, rather than passive, connotation. *Bailey*, 116 S. Ct. at 506 ("Had Congress intended possession alone to trigger liability under § 924(c)(1), it could easily have so provided."); *id*. at 508 ("A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession."); *id*. at 509 (noting that Congress did not include "intended" conduct within the ambit of § 924(c)(1)).

Without regard to whether simply placing a gun in your bedroom is "carrying" a gun, surely it stretches credibility to contend that lying on that bed in a room where there are no drugs is carrying a gun "during and in relation to" a drug trafficking offense simply because there are drugs in another area of the house. The majority makes absolutely no attempt to establish a nexus between Wainuskis' constructive possession of the Colt pistol and any underlying drug transaction. Wainuskis was charged with (though not convicted of) possession with intent to distribute methamphetamine. I suppose Wainuskis' ongoing constructive possession of methamphetamine creates the potential for an argument that she violated § 924(c) anytime she had constructive possession of drugs and wandered too close to a firearm. Fortunately, we have rejected that construction in a factually analogous case.

In *United States v. Hall*, 110 F.3d 1155 (5th Cir. 1997) the defendant was arrested after a search warrant was executed on a private residence. Officers found and arrested Hall in the living

room.  *Id*. at 1157-58.  There was a large quantity of cocaine on the coffee table and a gun lying on the floor within a few feet of the coffee table.  *Id*.  Hall pleaded guilty.  This Court reversed and vacated Hall's conviction, finding that he neither "used" nor "carried" the gun during and in relation to a drug trafficking offense.  *Id*. at 1162.  Although the *Hall* panel relied in part on the fact that the record did not demonstrate how close Hall was to the coffee table, and hence the gun, the panel also relied upon the fact that there was no evidence to establish "who transported the gun to the trailer or moved it to its position on the floor."  *Id*. at 1162.

Wainuskis presents an even stronger case for relief than *Hall*. In *Hall*, the gun was discovered in plain view, in the same room as both the defendant and the drugs.  In this case, the gun was found concealed under a mattress in a room where no drugs were found. The existing record does not support the inference that Wainuskis placed the gun under the mattress for the purpose of making it accessible to facilitate her drug trafficking offense.  Thus, the record contains no evidence that Wainuskis' constructive possession of the Colt pistol coincided with her employment of that weapon in the predicate drug offense.

In truth, although the majority purports to be requiring evidence that Wainuskis moved or transported the firearm, it has actually inferred that element out of existence and Wainuskis' conviction rests upon nothing more than what the government stated in the Rule 11 hearing -- constructive possession.  The majority

concedes as much with its comment that "Wainuskis merely possessed the weapon and did not actively employ it at the time of the search," a statement which seems out of line given its conclusion that Wainuskis "carried" the firearm. Possession of a gun, even during and in relation to a drug trafficking offense, has never been enough to support a § 924(c) conviction for "carrying" a gun. *See* **Smith**, 113 S. Ct. at 2059 (possession of a firearm during a drug trafficking offense is insufficient to support a § 924(c) conviction absent proof that the gun facilitated the drug trafficking offense); **Thompson**, 122 F.3d at 307 ("[i]t is clear that carry connotes more than mere possession"); **Hall**, 110 F.3d at 1161 (carry "must connote more than mere possession of a firearm by a person who commits a drug offense"); *see also* **Bailey**, 116 S. Ct. at 506 (if Congress "intended possession alone to trigger liability under § 924(c)(1) it easily could have so provided"); *id*. at 506 (the ordinary meanings of "use" and "carry" connote more than simple possession). Because the record does not contain any evidence that Wainuskis moved or transported the gun made the basis of her plea, I would hold that the factual basis supporting her plea is insufficient to support her liability on the alternative theory that she "carried" the Colt pistol.

Recognizing the weakness of the tenuous series of inferences underlying its conclusions that Wainuskis placed the gun under the mattress, the majority seeks to expand the offense by relying upon additional firearms seized from Wainuskis' house.[23] The problem

---

[23]   Contrary to the majority's presentation both the Rule 11

with that analysis is that there is no more evidence that Wainuskis moved any one of those other guns than there is evidence that she moved the Colt pistol made the basis of her plea. Likewise, there is no more evidence tying any of those guns to the predicate drug trafficking offense than there is with respect to the Colt pistol made the basis of her plea. Expanding the inquiry to the other guns does not bolster the majority's conclusion that Wainuskis was carrying a gun during and in relation to a drug trafficking offense.

Wainuskis and Materne admitted that the two guns made the subject of their respective convictions, the Ruger pistol found near Materne and the Colt pistol found near Wainuskis, were their guns. There is absolutely no evidence that the remaining guns found in the home, or any particular one of the guns found in the home, were exclusively Materne's and Wainuskis'. To the contrary, the PSR states that "numerous firearms in the kitchen/den area were located within arm's reach of the majority of the occupants of the kitchen and den." That statement suggests that there were a number of people in the house when the search occurred, and that those individuals may have been in possession of firearms. Likewise, there is no evidence establishing that Materne and Wainuskis lived at the Ellisville address alone or that they owned or controlled all of the firearms found at that address.

The record contains no evidence that Wainuskis moved, handled

hearing and the PSR rely upon Wainuskis' possession of the Colt pistol to define her offense.

32

or transported the firearm made the subject of her plea.  Even assuming that Wainuskis placed the gun under the mattress, the record contains no evidence that Wainuskis actively employed the firearm during and in relation to a drug trafficking offense.   I do not think we can ignore the lessons of *Bailey* and resurrect pre-*Bailey* § 924(c) law by simply ignoring both of those substantive elements of § 924(c) liability.  Wainuskis' conviction cannot be sustained by resort to the novel theory not contemplated in the district court that she "carried" the Colt pistol in violation of § 924(c).


**IV.**

I also dissent from the majority's conclusion that Wainuskis' conviction can be sustained on the theory that she aided and abetted Materne's independent violation of § 924(c).

As an initial matter, I object to the majority's reliance upon this theory which was not included in the indictment against Wainuskis, was not made the basis of her plea and was not in fact raised until the government filed a motion for reconsideration of the district court's decision to grant Wainuskis relief on her § 2255 motion.  I also believe, however, that the majority reaches the wrong conclusion from application of this theory.

Wainuskis' plea cannot be sustained on an aiding and abetting theory absent evidence that Materne violated § 924(c) and that Wainuskis engaged in conduct in furtherance of that offense.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 283 n.5 (5th Cir. 1992)

33

(aiding and abetting statute requires proof that principal committed subject offense); *United States v. McCoy*, 539 F.2d 1050, 1064 (5th Cir. 1976) ("It is true that the existence of the crime is an element of the offense of aiding and abetting."); *United States v. Barfield*, 447 F.2d 85, 89 (5th Cir. 1971) (aiding and abetting statute requires proof "beyond a reasonable doubt that the alleged offense was committed by someone and that the person charged as an aider and abettor assisted in the commission of the crime"). Wainuskis' assistance must be demonstrated with evidence that she (1) associated with the criminal venture; (2) participated in the venture; and (3) sought by action to make the venture succeed. *United States v. Salazar*, 66 F.3d 723, 729 (5th Cir. 1995); *United States v. Martiarena*, 955 F.2d 363, 366 (5th Cir. 1992).

The principal defect in the majority's aiding and abetting theory is that Materne was not convicted for violating § 924(c).[24] Moreover, the record evidence relating to the § 924(c) charge against Materne suffers from the same deficiencies as that

---

[24]  Materne initially pleaded guilty to violating § 924(c) at the same hearing in which Wainuskis pleaded guilty. The docket sheet reflects that Materne later filed a motion to withdraw his guilty plea to the § 924(c) charge, which was granted by the district court. The substance of Materne's second Rule 11 hearing, in which he pleaded guilty to other charges, is not part of the appellate record, but it is clear that he was not convicted on the § 924(c) charge.

34

presented against Wainuskis. The majority posits that Materne was both "using" and "carrying" the Ruger pistol. The pistol was not "used" just because it was sitting in plain view when police searched the house, a fact which the majority equates with Materne's active employment by "display." *Bailey*, 116 S. Ct. at 508 ("The active-employment understanding of 'use' certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm."). Whatever the Supreme Court meant by "displaying" a firearm, I feel sure that "active employment" requires something more than simply being within arm's reach of a visible gun in your home. Similarly, the gun was not "carried" just because, as with the Colt pistol attributed to Wainuskis, it was found within arm's reach of Materne. The majority's construction would permit Materne's liability any time he wandered within arm's reach of a visible firearm at the same time he was also in constructive possession of drugs. Such a construction reads out Congress' limitation to firearms used and carried "during and in relation to" a drug trafficking offense. *See Smith*, 113 S. Ct. at 2059. Thus, I am not at all certain that the record sufficiently establishes an independent § 924(c) violation by Materne.

Even assuming the record establishes Materne's independent violation of § 924(c), there is absolutely no evidence to establish the post-judgment theory that Wainuskis aided and abetted that violation. The majority's discussion depends upon Wainuskis' participation in Materne's drug trafficking. *See* Majority Opinion

35

at 12-13 ("That the couple lived together and sold drugs together for a period of five months indicates the type of on-going offense to which this doctrine may be easily applied."). Selling drugs, even when done together, does not violate § 924(c) and does not tend to show how or whether Wainuskis facilitated Materne's possession of the Ruger pistol.

Wainuskis cannot be held liable for aiding and abetting Materne unless she "engaged in some affirmative conduct designed to aid the venture." *Martiarena*, 955 F.2d at 367 (rejecting as insufficient government's evidence that defendant knew about and attempted to avoid principal's exposure to liability for offense, and requiring evidence that defendant "actively participated in conduct that assisted or rewarded principal's offense"). Specifically, Wainuskis' plea must be supported with evidence that she knew the particular gun was available to Materne and that she took some action which assisted Materne's use or carriage of the weapon. *E.g.*, *Salazar*, 66 F.3d at 729 ("the jury was required to find that Salazar knew that the gun was at least available to Hernandez and that Salazar took some action which assisted Hernandez's use of the gun") (internal citation omitted). Mere presence and association, which are all that has been shown here, are insufficient. *Id.*; *Martiarena*, 955 F.2d at 366-67.

The majority also invokes the aiding and abetting theory with respect to the Colt pistol found under Wainuskis' mattress and with respect to the additional firearms found in the house. I can think of no reason why, after reaching the conclusion that Wainuskis'

36

plea is supported by a sufficient factual basis with respect to her own conduct, the majority needs to develop not one but three separate theories for holding her vicariously liable for Materne's conduct. The gist seems to be that there are plenty of bad facts to support the notion that somewhere, at some time, § 924(c) was violated, whether by Materne with Wainuskis' knowledge and assistance, or by Wainuskis herself. While I can understand, and perhaps even sympathize with that position, I think the majority's indulgence in a fanciful series of inferences and theories reveals a blindly determined intent to support the guilty plea. Federal Rule of Criminal Procedure 11 and the well-established constitutional principles upon which it is based require more. The appropriate remedy is to remand with instructions that each element of the pleaded offense be supported with some factual basis. The government's Rule 11 burden is light and can be met with evidence logically addressing each element of the offense. When, as here, the law changes dramatically after a plea such that we are purporting to sustain a guilty plea on at least four alternative theories that were never part of the calculus when the defendant pleaded guilty, I think justice demands that we return the case to the district court for a clarification of the plea.

I would vacate Wainuskis' plea and remand to the district court for repleading or trial with due consideration of the Supreme Court's decision in *United States v. Bailey*, 116 S. Ct. 501 (1995).